RAYMOND D. DIAZ and MARY JANE DIAZ,
Appellants, *v.* LEN FERNE, Respondent.

No. 40358

February 25, 2004

84 P.3d 664

[Rehearing denied May 5, 2004]

[En banc reconsideration denied May 27, 2004]

*Jones Vargas* and *Melvin D. Close Jr.* and *Elizabeth M. Ghanem,* Las Vegas, for Appellants.

*Law Offices of Jay Hampton & Associates* and *Jay R. Hampton,* Henderson, for Respondent.

Before Shearing, C. J., Becker and Gibbons, JJ.

# OPINION

*Per Curiam:*

The district court issued a permanent injunction prohibiting Raymond and Mary Jane Diaz from installing a manufactured home on their lot in the Calvada Valley subdivision. The Diaz family appeals. The principal issue on appeal is whether the subdivision's Conditions, Covenants and Restrictions (CC&Rs) prohibit installation of manufactured homes on lots designated for single-family residences. We conclude that the CC&Rs do not prohibit installation of manufactured homes on these lots. We, therefore, reverse the district court's order enjoining the Diaz family from installing a manufactured home on their property.

## FACTS

In June 1987, the CC&Rs were recorded for unit fourteen of the Calvada Valley subdivision in Pahrump, Nye County, Nevada. The CC&Rs included limitations on the use of land within unit fourteen. The subdivision lots' classifications included "Single-Family Lots" and "Mobile Home Lots." The CC&Rs also restricted the placement, alteration, or erection of buildings without the approval of the Architectural Review Committee[1] (architectural committee). These restrictions were to remain in force until the year 2027.

The CC&Rs provide, in pertinent part:

> Lots in the subdivision shall be classified by permitted uses, building requirements and limitations, set-backs and parking requirements for each permitted use classification are as follows:
>
> . . . .
> 
> A. Single-Family Lots
> 1. Lots of this classification shall be used only for single-family homes, including accessory buildings.
>
> . . . .
>
> F. Mobile Home Lots
> 1. Lots of this classification shall be used only for single-family dwellings or mobile homes.

The CC&Rs continue:

> No building shall be erected, placed or altered on any lot until the construction plans and specifications and a plan

---

[1]Although CC&Rs refer to the Architectural Control Committee, this committee actually refers to itself as the Architectural Review Committee.

showing the location of the structure have been approved in writing by the Developer or Architectural Control Committee as may be formed by Declarant, or its duly authorized agent as to quality of workmanship and materials, harmony of external design with existing structures and location with respect to topography and finished grade elevation.

In December 2000, the Diaz family purchased property designated as a "Single-Family Lot" in the Calvada Valley subdivision. The Diaz family submitted an application to the Pahrump Regional Planning District, requesting permission to build a manufactured home on their lot. The Diaz family subsequently received a letter from the Calvada Valley Homeowners Protection Corporation denying their request. The letter stated, in pertinent part:

[T]he current use of your property is in direct violation of Calvada's C.C. & R.'s and/or Deed Restrictions. These violations are described below:

1. You are under some kind of construction on lot 6, block 12, unit 14, without the approval or disapproval, of the Architectural Review Committee.

2. You must cease any and all construction until your plans are submitted to the ARC.

In a letter to the Calvada Homeowners Protection Corporation, the Diaz family explained their plans to build a "triple-wide modular home with an attached two-car garage on the property," and again requested approval. The architectural committee denied the Diaz family's request. The Diaz family proceeded with construction of the manufactured home. An owner of another lot in the same area brought suit to enjoin further construction of the manufactured home.

After trial, the district court found that "[a]ll property located in Calvada Valley, Unit 14, including Defendant's Lot, is subject to [the CC&Rs] recorded on June 3, 1987." The district court also found that the CC&Rs provide that the use of certain lots is limited, and mobile homes are not allowed on the lot owned by the Diaz family. The district court concluded that "[t]he term mobile home as used in the [CC&Rs] unambiguously includes a manufactured home" and "[t]he [CC&Rs] prohibit Defendants from placing a manufactured home on their Lot." The district court permanently enjoined the Diaz family from constructing a manufactured home on their lot. The Diaz family appealed.

## DISCUSSION

The Diaz family contends that the district court erred in permanently enjoining them from installing a manufactured home on

their property. They maintain that the district court incorrectly found that the term ''mobile home'' includes ''manufactured homes'' and that manufactured homes cannot be placed on the lots designated for single-family dwellings.

This court must interpret the Calvada Valley subdivision CC&Rs. The rules of construction governing the interpretation of contracts apply to the interpretation of restrictive covenants for real property.[2] When there is no dispute of fact, a contract's interpretation is a legal question subject to de novo review.[3]

We have held that ''[r]estrictive covenants are strictly construed''[4] and enforceable, if the original purpose for the covenant continues to result in a substantial benefit to the restricted subdivision.[5] Words in a restrictive covenant, like those in a contract, are construed according to their plain and popular meaning.[6]

The problem here is that the subdivision's CC&Rs do not mention the term ''manufactured home.'' The Diaz family argues that a manufactured home is not a mobile home. Although the district court concluded that the term ''mobile home'' unambiguously includes a ''manufactured home,'' we cannot agree. We conclude that a ''manufactured home'' is distinct from a ''mobile home,'' both in popular meaning and in the Nevada statutes.

Nevada statutes clearly draw a distinction between a manufactured home and a mobile home. NRS 489.113 provides, in pertinent part:

1. ''Manufactured home'' means a structure which is:

(a) Built on a permanent chassis;

(b) Designed to be used with or without a permanent foundation as a dwelling when connected to utilities;

(c) Transportable in one or more sections; and

(d) Eight feet or more in body width or 40 feet or more in body length when transported, or, when erected on site, contains 320 square feet or more.

2. The term includes:

(a) The plumbing, heating, air-conditioning and electrical systems of the structure.

---

[2]*Tompkins v. Buttrum Constr. Co.,* 99 Nev. 142, 144, 659 P.2d 865, 866 (1983).

[3]*Lorenz v. Beltio, Ltd.,* 114 Nev. 795, 803, 963 P.2d 488, 494 (1998).

[4]*Dickstein v. Williams,* 93 Nev. 605, 608, 571 P.2d 1169, 1171 (1977).

[5]*Valley Motor v. Almberg,* 106 Nev. 338, 339, 792 P.2d 1131, 1132 (1990); *see also Meredith v. Washoe Co. Sch. Dist.,* 84 Nev. 15, 19, 435 P.2d 750, 753 (1968).

[6]*Tompkins,* 99 Nev. at 144, 659 P.2d at 866.

(b) Any structure:

(1) Which meets the requirements of paragraphs (a) to (c), inclusive, of subsection 1, and with respect to which the manufacturer voluntarily files a certification required by the Secretary of Housing and Urban Development and complies with the standards established under the National Manufactured Housing Construction and Safety Standards Act of 1974, 42 U.S.C. §§ 5401 et seq.; or

(2) Built in compliance with the requirements of chapter 461 of NRS.

In contrast, NRS 489.120 defines a "mobile home," in pertinent part, as follows:

1. "Mobile home" means a structure which is:

(a) Built on a permanent chassis;

(b) Designed to be used with or without a permanent foundation as a dwelling when connected to utilities; and

(c) Transportable in one or more sections.

. . . .

3. The term does not include a recreational park trailer, travel trailer, commercial coach or *manufactured home or any structure built in compliance with the requirements of chapter 461 of NRS.*

(Emphasis added.)

In addition, the subject matter and title of NRS chapter 461 is "Manufactured Buildings" and the chapter sets forth the standards for construction. NRS 461.080 defines "factory-built housing" as follows:

"Factory-built housing" means a residential building, dwelling unit or habitable room thereof which is either wholly manufactured or is in substantial part manufactured at an off-site location to be wholly or partially assembled on-site in accordance with regulations adopted by the Division pursuant to NRS 461.170, but *does not include a mobile home* or recreational park trailer.

(Emphasis added.) Furthermore, NRS 461.030, which sets forth the policy of the state, provides, in pertinent part:

2. The legislature further finds and declares that by minimizing the problems of standards and inspection procedures, it is demonstrating its intention to encourage the reduction of housing construction costs and to make housing and home ownership more feasible for all residents of the State.

These legislative provisions were in effect in 1987 when the CC&Rs were filed. Therefore, we must presume that the drafters of the CC&Rs were aware of the distinction between manufactured

homes and mobile homes recognized by the Nevada Legislature and its express policy. If the drafters of the CC&Rs had intended to exclude manufactured homes from lots designated for single-family residences, they would have explicitly done so.

In 1999, the Nevada Legislature emphasized the state policy of encouraging the use of manufactured homes by enacting NRS 278.02095, which requires that in any ordinance relating to the zoning of land, the definition of "single-family residence" must include a manufactured home that has been built in compliance with the Uniform Building Code's standards for single-family residential dwellings. NRS 278.02095(5) does provide that recorded restrictive covenants may prohibit manufactured homes, but the Calvada Valley CC&Rs do not specifically contain such a provision.

We have held that " 'a grantee can only be bound by what he had notice of, not the secret intentions of the grantor.' "[7] Since the CC&Rs are silent on the issue of manufactured homes, the CC&Rs cannot be used to prohibit the installation of manufactured homes on lots designated as Single-Family Lots.

## CONCLUSION

The order of the district court permanently enjoining the Diaz family from installing a manufactured home on their subdivision lot is reversed.

---

[7]*Caughlin Homeowners Ass'n v. Caughlin Club,* 109 Nev. 264, 268, 849 P.2d 310, 312 (1993) (quoting *Lakeland Property Owners Ass'n v. Larson,* 459 N.E.2d 1164, 1170 (Ill. App. Ct. 1984)).