*850
 
 OPINION
 

 By the Court,
 

 Cherry, J.:
 

 This appeal raises the issue of whether sovereign immunity principles apply to shield a county from civil liability in an action to recover damages following abatement of a nuisance. Although Nevada has waived its sovereign immunity by statute, exceptions to the waiver apply, including one that protects political subdivisions of the state from liability for their discretionary acts. As we recently adopted in
 
 Martinez
 
 v.
 
 Maruszczak
 
 the federal two-part test for determining whether the discretionary-function exception to the general waiver of sovereign immunity applies to protect a government entity from liability,
 
 [1]
 
 we use the test here to determine if a county’s actions in abating a property of a nuisance are immune from civil liability. Because a county’s actions in abating a nuisance satisfy both criteria of the test, we conclude that immunity applies to shield the County from liability here and, therefore, the district court properly entered judgment in favor of the County.
 

 FACTS AND PROCEDURAL HISTORY
 

 Appellant Gary Ransdell owns residential property in Clark County, Nevada. On April 30, 2003, the Clark County Public Response Office received a nuisance complaint regarding Ransdell’s property, alleging that the property was cluttered with trailers, vehicles, a bus, junk, trash, debris, other miscellaneous items, and a green pool. County inspector A1 Dixon first inspected the property on May 2, 2003, and issued a courtesy notice that the property was in violation of various Clark County Code sections for the presence of the above-mentioned items. Dixon conducted a second inspection and, after noting no change to the property, he issued a formal notice of violation on May 19, 2003, citing the same code violations for (1) accumulated solid waste, rubbish, and debris, including junk vehicles; (2) storage of unlicensed and inoperable vehicles; and (3) using a residential zone for outside storage.
 

 On June 5, 2003, Dixon conducted his second formal inspection and issued a second notice of violation. Thereafter, he returned to the property twice more for follow-up visits. After observing no change to the property, Dixon forwarded the case to County inspector Cindy Lucas. The County then received a second complaint about the property alleging that Ransdell was operating a metal salvage and auto repair yard on the property, in violation of the County Code.
 

 Following this second complaint, Lucas evaluated the property on September 22, 2003, at which time she posted a Notice
 
 *851
 
 of Abatement. The notice informed Ransdell that he had until October 14, 2003, to voluntarily abate the nuisance from his property or the County would institute involuntary abatement procedures. The notice also informed Ransdell of his right to pursue an administrative appeal within ten days of the notice’s date pursuant to Clark County Code Section 11.06.050. Ransdell admittedly did not pursue any administrative relief.
 

 Although Ransdell did not pursue formal administrative relief in accordance with the County Code, he contacted County Code Enforcement Manager Jim Foreman to request an on-site meeting. On October 14, 2003, Lucas and Foreman met with Ransdell to discuss options to bring his property into compliance. Based on this meeting, Ransdell was given until December 1, 2003, to file a use permit for the items on his property and to find a commercial yard or build an appropriate storage structure on his property to house the nuisance items. On December 9, 2003, Lucas issued a notice of abatement extension to allow Ransdell more time to either obtain a use permit for temporary outside storage while he constructed a permanent accessory storage structure or remove the nuisance items from the property. The extension was set to expire on January 29, 2004. Ransdell, however, did not obtain the use permit, voluntarily abate the property, or request an administrative hearing to dispute the abatement before the extension expired.
 

 On March 9, 2004, Lucas filed in justice court an application and supporting affidavit, requesting an administrative warrant to abate Ransdell’s property on the grounds that he was operating a salvage yard or junkyard in a residential district and that his property contained accumulated solid waste in the form of inoperative vehicles, vehicle parts, trailers, scrap metal, wood, garbage, rubbish, and debris. The justice court issued the warrant, which required that the County file a written inventory of the items abated, and authorized the County to break locks, remove barriers, and use similar force to execute the warrant after it announced the abatement.
 

 The County announced and abated the property over a three-day period beginning March 25, 2004. It is clear from the record that the County’s abatement followed County Code provisions. According to the warrant return, the items seized included numerous vehicle parts, tires, engines, vehicle body parts, dismantled bicycles, bicycle parts, scrap metals, a dilapidated shed, wood pallets, tarps, discarded chairs, rusted metal fencing, rusted grates, numerous inoperative motor bikes and parts, garbage, rubbish, weeds, and debris. The County also submitted a line-item inventory list of all vehicles seized and removed.
 

 Following the abatement, Ransdell filed a civil complaint in district court, requesting compensatory and punitive damages and alleging eight causes of action, which included (1) claims that his
 
 *852
 
 constitutional procedural and substantive due process and equal protection rights had been violated
 
 [2]
 
 and (2) tort law claims of trespass to land and chattels, conversion, nuisance, and negligence. The County answered the complaint, generally denying the allegations and asserting several affirmative defenses, including that Ransdell had failed to state claims upon which relief could be granted, that he waived or was estopped from asserting certain claims by virtue of his own conduct, and that the County’s actions in abating the property were discretionary and therefore entitled to immunity from civil liability.
 

 In addition to his complaint, Ransdell filed a motion to quash the administrative seizure warrant and for an accounting and return of the items seized during the abatement. Clark County opposed the motion, and the district court denied it, finding that Ransdell had been afforded adequate due process, the warrant was supported by probable cause, and the abatement and inventory were reasonable under the circumstances.
 

 Subsequently, the County filed a motion to either dismiss the complaint in part or for partial summary judgment, arguing first that any request for punitive damages must be denied under NRS 41.035(1). Next, the County argued that Ransdell’s claim that his procedural due process rights had been denied must fail because he received adequate notice and was given the opportunity to be heard, and that due process principles do not encompass an inventory of items seized in an abatement. The County also maintained that the warrant was supported by probable cause and that the warrant properly included, among other items, “inoperative vehicles.” The County next asserted that Ransdell failed to state a claim for denial of his substantive due process rights, arguing that the term “inoperative automobiles” is not vague under Nevada law and that other jurisdictions have specifically addressed the term “inoperable vehicles” in the context of nuisance abatements and concluded that it passed constitutional scrutiny. Addressing Ransdell’s equal protection claim, the County argued that Ransdell
 
 *853
 
 failed to state a claim for relief because he did not allege that he is a member of a protected class or that he is the only person whose property has been subject to abatement. Finally, the County contended that Ransdell’s negligence claim should be dismissed under NRS 41.032(2), which provides the County with immunity from civil liability for its discretionary acts.
 

 The district court granted the County’s motion. In particular, the district court found that Ransdell’s claim for negligence failed because the County was entitled to immunity under NRS 41.032(2), and it therefore dismissed the claim. In dismissing Ransdell’s substantive due process claim, the court found that the claim failed under
 
 Matter of T.R.,
 
 which provides that a plaintiff ‘“must demonstrate that the law is impermissibly vague in all of its applications,’ ” in order to succeed on a facial challenge for vagueness.
 
 [3]
 
 The court also dismissed Ransdell’s claim that his equal protection rights had been denied, citing
 
 City of Las Vegas v. 1017 South Main Corp.,
 

 [4]
 
 in which this court concluded that to succeed on an equal protection challenge to an ordinance based on vagueness, the plaintiff must demonstrate that the ordinance allows unfettered discretion in the governing body’s officials who are charged with its administration, so that it facilitates an opportunity for arbitrary and discriminatory enforcement.
 
 [5]
 
 In dismissing Ransdell’s request for punitive damages, the district court cited NRS 41.035(1), which provides that, even when a county is subject to civil liability, punitive damages nevertheless are not available against it.
 

 As for the County’s motion for partial summary judgment, the district court granted the motion, entering judgment in favor of the County on Ransdell’s procedural due process claim, reasoning that because Ransdell failed to exercise his right to an administrative appeal and the county properly fulfilled the warrant requirements, no genuine issue of material fact remained as to whether he was afforded notice and an opportunity to be heard.
 

 Subsequently, the County filed a motion for summary judgment as to Ransdell’s remaining claims for trespass to land and chattels, conversion, and nuisance. Relying on its prior rulings, the district court granted the County’s motion, finding that the County was entitled to NRS 41.032(2) immunity on those remaining claims. Ransdell has timely appealed.
 

 DISCUSSION
 

 Ransdell raises several arguments on appeal. We begin by considering Ransdell’s arguments as to whether the district court erred
 
 *854
 
 in finding that Clark County was entitled to sovereign immunity from tort liability under NRS 41.032(2)’s discretionary-function exception to the general waiver of sovereign immunity.
 

 Issues of sovereign immunity under NRS Chapter 41 present mixed questions of law and fact.
 
 [6]
 
 We review questions of statutory construction de novo, and we will not disturb the lower court’s findings of fact when those findings are supported by substantial evidence.
 
 [7]
 

 In relevant part, NRS 41.032 states that
 

 [N]o action may be brought under NRS 41.031 or against ... an officer or employee of the State or any of its agencies or political subdivisions which is:
 

 2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused.
 

 Thus, NRS 41.032(2) grants the State and its political subdivisions sovereign immunity from civil liability when the challenged act was discretionary in nature.
 

 Ransdell argues that the district court erred in finding that the County’s actions were entitled to NRS 41.032(2) immunity because the acts in question — the abatement and subsequent inventory — were ministerial rather than discretionary functions. In response, the County contends that the abatement and inventory required the County'inspectors to exercise personal judgment and deliberation. Thus, the County maintains, the district court properly determined that its decision and actions in abating Ransdell’s property are protected from civil liability under NRS 41.032(2).
 

 Neither party had the benefit of our recent decision in
 
 Martinez
 
 v. Maruszczak
 
 [8]
 
 for purposes of briefing this appeal.
 
 [9]
 
 Nevertheless, that opinion governs here, and applying the two-part federal test as articulated in
 
 Berkovitz
 
 v.
 
 United States
 

 [10]
 

 and
 
 United States
 
 v.
 
 *855
 

 Gaubert,
 

 [11]
 

 which we adopted in
 
 Martinez,
 
 we conclude that the County’s actions are entitled to discretionary-act immunity from tort liability under NRS 41.032(2). In particular, as we explained in
 
 Martinez,
 
 under the
 
 Berkovitz-Gaubert
 
 test, government actions fall within the scope of discretionary-act immunity when they (1) “involve an element of individual judgment or choice,” and (2) are “based on considerations of social, economic, or political policy.”
 
 [12]
 
 Under that test, decisions that occur at all levels of government, including frequent or routine decisions, may be shielded by NRS 41.032(2) discretionary-act immunity, provided the decisions involved government policy concerns.
 
 [13]
 
 Here, as set forth below, Clark County’s actions in abating Ransdell’s property fit squarely within the confines of the
 
 Berkovitz-Gaubert
 
 discretionary-act immunity test.
 

 Investigation of nuisance property involves an element of judgment or choice
 

 As set forth in
 
 Martinez,
 
 we will first examine whether the County’s actions in abating Ransdell’s property involved an “ ‘element of judgment or choice.’ ”
 
 [14]
 
 We begin our analysis by examining a factually similar case, in which the Iowa Supreme Court adopted and applied the
 
 Berkovitz-Gaubert
 
 test to the City of Le Claire’s decision to abate a nuisance property.
 
 [15]
 

 In
 
 Goodman
 
 v.
 
 City of Le Claire,
 
 the plaintiff Gary A. Goodman was the proposed developer of a new subdivision in Le Claire, Iowa.
 
 [16]
 
 During construction, the contractor uncovered on the proposed site an area containing tires, broken concrete, pipe, car parts, bed springs, broken glass, water heaters, and household garbage.
 
 [17]
 
 The city determined that the debris and dirt on Goodman’s property constituted an abandoned landfill and, therefore, a removable nuisance. Goodman instituted a negligence action against the city after the city removed the dirt and debris and billed Goodman for the cost of the abatement.
 
 [18]
 
 Although the city twice moved to dismiss the action based on Iowa’s discretionary-act
 
 *856
 
 immunity statute, the trial court denied the city’s motions.
 
 [19]
 
 Subsequently, the jury returned a verdict in favor of Goodman and the city appealed.
 
 [20]
 

 In analyzing the city’s appeal, the Iowa Supreme Court adopted and applied the
 
 Berkovitz-Gaubert
 
 test to determine whether Iowa’s discretionary-function statute applied.
 
 [21]
 
 As for the
 
 Berkovitz-Gaubert
 
 test’s first criterion, the Court in
 
 Goodman
 
 concluded that the city administrator’s actions were discretionary because he exercised judgment in deciding whether to label the debris an abandoned landfill, thus potentially subjecting the city to liability to Goodman or to leave the landfill and possibly violate environmental laws.
 
 [22]
 
 Thus, the Iowa court determined that the city administrator’s actions met the first part of the
 
 Berkovitz-Gaubert
 
 test because the issue of whether the debris was a landfill or merely extraneous junk was a product of the city administrator’s judgment.
 
 [23]
 

 In reaching its decision, the
 
 Goodman
 
 court pointed out that the law did not provide specific criteria for determining whether an area was a dump at one time and that the city therefore had considerable discretion in making that determination.
 
 [24]
 
 Here, Clark County Code Section 11.06.010(c) defines debris, rubbish, and refuse as that which is, “visible to the public and is offensive to the senses, or is dangerous to the health, safety or welfare of the public.” Moreover, NRS 244.3605 authorizes Nevada counties to abate property when a “dangerous condition” exists. Dangerous condition is defined as, among other things, that which ‘ ‘may cause injury to or endanger the health, life, property, or safety of the general public.”
 
 [25]
 
 Thus, as in
 
 Goodman,
 
 the actions of the Clark County inspectors in this case were discretionary because the abatement procedure required the inspectors to use their own judgment and conduct individual assessments of the conditions on Ransdell’s property to determine if abatement was required under the Clark County Code. The inspectors had to determine the nature of various items on Ransdell’s property, whether Ransdell was operating a salvage yard or junkyard on his residential property, and if the debris amounted to a dangerous condition, posing a public health or welfare risk in violation of the County Code.
 

 Accordingly, because the County’s actions involved individual judgment and deliberation, they meet the first criterion of the
 
 *857
 

 Berkovitz-Gaubert
 
 test, as adopted in
 
 Martinez v. Maruszczak.
 
 Therefore, we must next determine whether the County’s judgment here is ‘“of the kind that the discretionary-function exception was designed to shield.’ ’ ’
 
 [26]
 

 The County’s actions were based on considerations of social, economic, and political policy
 

 Under the second part of the
 
 Berkovitz-Gaubert
 
 test, the discretionary action must be “based on considerations of social, economic, or political policy” in order to fall within the discretionary-function exception’s ambit.
 
 [27]
 
 The County argues that strong public policy considerations related to public health, safety, and welfare are associated with abatement procedures generally. We agree.
 

 In determining that the City of Le Claire’s actions in abating Goodman’s property were grounded on public policy considerations, the Iowa Supreme Court reasoned that
 

 [t]he uncovered waste material posed environmental concerns as well as concerns with compliance with the law. Leaving the waste material where it was found without further investigation and action, could have resulted in damage to the environment and subjected the city to possible adverse economic consequences for violating the law.
 
 [28]
 

 Thus, the court concluded that the city’s actions turned on social, economic, and political concerns, as contemplated by the
 
 Berkovitz-Gaubert
 
 test’s second criterion.
 
 [29]
 

 Here, the same reasoning applies to Clark County’s decision because the goals of the County in abating Ransdell’s property were motivated by environmental, health, and economic policies supported by Clark County Code and statutory authority. Specifically, Clark County Code Section 11.06.010(c) defines debris, rubbish, and refuse, while NRS 244.3605 authorizes County intervention where such debris poses a danger to the health, life, property, or safety of the general public or property owner. In this case, Clark County inspectors were required to evaluate whether the conditions on Ransdell’s property posed health and safety concerns for the residents in and around Ransdell’s property and whether the public welfare might be impacted by the condition of his property. The
 
 *858
 
 potential for environmental, public welfare, and adverse economic consequences for violating the law are valid public policy concerns.
 
 [30]
 
 Accordingly, because the County’s actions were grounded on public policy concerns, as expressed in the County Code and Nevada’s abatement statute, they fit within the second criterion of the
 
 Berkovitz-Gaubert
 
 test.
 
 [31]
 

 Because the County’s actions have satisfied both criteria of the
 
 Berkovitz-Gaubert
 
 test, we conclude that Clark County is entitled to sovereign immunity from civil liability under NRS 41.032(2), the discretionary-function exception to Nevada’s general waiver of sovereign immunity. Therefore, the district court properly dismissed Ransdell’s negligence claim and properly entered judgment in favor of the County on Ransdell’s trespass to land and chattels, conversion, and nuisance claims.
 
 [32]
 

 Ransdell’s constitutional violation claims
 

 Ransdell’s remaining claims, which the district court resolved by way of dismissal or summary judgment, all were based on his assertion that the term “inoperative automobiles” is unconstitutionally vague.
 

 Our review of the order dismissing Ransdell’s claims for deprivation of his substantive due process and equal protection rights is rigorous,
 
 [33]
 
 as we, in determining whether Ransdell has set forth allegations sufficient to state a claim for relief,
 
 [34]
 
 accept all factual allegations in his complaint as true and construe all inferences in his favor.
 
 [35]
 
 Accordingly, Ransdell’s complaint was properly dismissed only if his allegations would not entitle him to any relief.
 
 [36]
 

 
 *859
 
 In this case, Ransdell’s substantive due process claim was grounded on an allegation that he could not have been adequately apprised of what items on his property were subject to abatement because the term “inoperative automobiles” is subject to more than one interpretation and his equal protection claim was based on an allegation that the County relies on its code in an arbitrary and capricious manner by confiscating vehicles that cannot legally be driven on public roadways, while allowing others to retain such vehicles on their property.
 

 The County’s code is presumed to be constitutionally valid.
 
 [37]
 
 In order to succeed on a facial challenge to a law on vagueness grounds, the plaintiff must demonstrate that the law is “ ‘impermissibly vague in all of its applications.’ ’ ’
 
 [38]
 
 Under that analytical framework, a reviewing court should examine the plaintiff’s conduct “before analyzing other hypothetical applications of the law” because “[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.”
 
 [39]
 
 A law will be upheld against a vagueness claim if its ‘ ‘terms can be made reasonably certain by reference to other definable sources.”
 
 [40]
 

 With the presumption of validity, and in light of the governing standard, under which a plaintiff must demonstrate that a law is impermissibly vague in all of its applications in order to succeed on a facial challenge grounded on vagueness, we conclude that the district court properly dismissed Ransdell’s claims that he was deprived of substantive due process when the County abated his property of “inoperative” vehicles.
 
 [41]
 

 Addressing Ransdell’s claim that he was deprived of equal protection under the law, such a claim will succeed when the plaintiff can demonstrate he has been “ ‘denied the same protection of the
 
 *860
 
 law which is enjoyed by other classes in like circumstances.’ ”
 
 [42]
 
 Although Ransdell alleged that others have been allowed to retain inoperable vehicles on their property, he failed to allege that the others to which he referred were similarly situated. Nevertheless, construing his pleadings liberally, as we must, and thus assuming that Ransdell was referring to other property owners who were similarly situated in that they had violated the Clark County Code by storing inoperable vehicles, Ransdell still failed to state a claim upon which relief could be granted because property owners are not a protected class, and he did not allege that he was the only person to whom Clark County Code Chapter 11.06 had been applied.
 
 [43]
 
 Accordingly, the district court properly dismissed Ransdell’s equal protection claim.
 

 As for the partial summary judgment on Ransdell’s claim that his procedural due process rights were violated, we review orders granting summary judgment de novo.
 
 [44]
 
 Summary judgment was appropriate here if the pleadings and other evidence on file, viewed in a light most favorable to Ransdell, demonstrate that no genuine issue of material fact remained in dispute and that Clark County was entitled to judgment as a matter of law.
 
 [45]
 
 To withstand summary judgment, Ransdell could not rely solely on the general allegations and conclusions set forth in his complaint, but must instead have presented specific facts demonstrating the existence of a genuine factual issue supporting his claims.
 
 [46]
 

 Here, Ransdell, in bringing his motion to quash the seizure warrant and in alleging in his complaint that he had been deprived of his constitutional rights, argued that the term “inoperative automobile” or “inoperative vehicle” was impermissibly vague because reasonable people could assign it different meanings. Ransdell was aware, however, through notices provided by the County, that the abatement would include the removal of inoperable automobiles or vehicles, but he neglected to challenge the County’s decision to abate his property of such items through available administrative proceedings. Instead, he waited until after the abatement was completed and the nuisance items removed from his property and taken to a landfill to file his district court action. In entering summary judgment on Ransdell’s procedural due process
 
 *861
 
 violation claim, the district court specifically found that the seizure warrant was based on probable cause
 
 [47]
 
 and that it set forth with particularity the manner and scope of the abatement, and that the warrant issued for the reasonable purpose of abating a nuisance in order to protect the public health, safety, and welfare.
 
 [48]
 
 We perceive no error in the district court’s conclusion that Ransdell was afforded procedural due process and that the County was entitled to judgment as a matter of law on his claim that he was deprived of such process.
 
 [49]
 

 CONCLUSION
 

 Because a county’s decision and actions in declaring and abating a nuisance are discretionary in nature and are made in furtherance of public policy goals, such decisions and actions are immune from civil liability under NRS 41.032(2). Thus, the district court properly dismissed or entered summary judgment on Ransdell’s claims for negligence, trespass to chattels and land, conversion, and nuisance. As for Ransdell’s claims that he was deprived of his constitutional rights to procedural and substantive due process and equal protection under the law, based on his allegation that the County Code and the warrant used vague terms to describe property to be abated, we perceive no error in the district court’s disposition of those claims. Accordingly, we affirm the district court’s judgment.
 

 Gibbons, C. J., Maupin, Hardesty, Parraguirre, Douglas and Saitta, JJ., concur.
 

 [1]
 

 Martinez v. Maruszczak,
 
 123 Nev. 433, 446-47, 168 P.3d 720, 729 (2007).
 

 [2]
 

 With regard to his procedural due process claim, Ransdell alleged that the County confiscated his property without a proper warrant, without a proper inventory, and without following proper procedures. He alleged in particular that the County relied on Clark County Code Section 11.06.010(c) — which includes “inoperable automobiles” in its definition of debris, rubbish, and refuse — in abating his property, arguing that the term is subject to more than one reasonable interpretation. As for the substantive due process claim, Ransdell alleged that Clark County Code Section 11.06.010(c) is unconstitutionally vague and that the law governing abatements is therefore unreasonable and unfair. In alleging that his equal protection rights had been violated, Ransdell again challenged the Code’s use of “inoperable automobiles” in its definition section, arguing that it unfairly discriminates against similarly situated people by allowing the County to confiscate vehicles that cannot legally be driven, while allowing others to retain such vehicles on their property.
 

 [3]
 

 119 Nev. 646, 652, 80 P.3d 1276, 1280 (2003) (quoting
 
 Hoffman Estates
 
 v.
 
 Flipside, Hoffman Estates,
 
 455 U.S. 489, 497 (1982)).
 

 [4]
 

 110 Nev. 1227, 885 P.2d 552 (1994).
 

 [5]
 

 See id.
 
 at 1231, 885 P.2d at 554.
 

 [6]
 

 Martinez, 123 Nev. at 438, 168 P.3d at 724.
 

 [7]
 

 Id.
 
 at 438-39, 168 P.3d at 724 (citing
 
 Gilman v. State, Bd. of Vet. Med. Exam’rs,
 
 120 Nev. 263, 271, 89 P.3d 1000, 1005-06 (2004), and
 
 Mainor
 
 v.
 
 Nault,
 
 120 Nev. 750, 758-59, 101 P.3d 308, 314 (2004)).
 

 [8]
 

 123 Nev. 433, 168 P.3d 720.
 

 [9]
 

 Both parties, however, filed supplemental briefs addressing
 
 Martinez
 
 and its application to the issues presented in this matter.
 

 [10]
 

 486 U.S. 531 (1988).
 

 [11]
 

 499 U.S. 315 (1991).
 

 [12]
 

 Martinez,
 
 123 Nev. at 446-47, 168 P.3d at 729.
 

 [13]
 

 Id.
 
 at 447, 168 P.3d at 729.
 

 [14]
 

 Id.
 
 at 445, 168 P.3d at 728 (quoting
 
 Berkovitz,
 
 486 U.S. at 536).
 

 [15]
 

 Goodman v. City of Le Claire,
 
 587 N.W.2d 232 (Iowa 1998).
 

 [16]
 

 Id.
 
 at 233.
 

 [17]
 

 Id.
 

 [18]
 

 Id.
 
 at 235.
 

 [19]
 

 Id.
 

 [20]
 

 Id.
 

 [21]
 

 In
 
 Goodman,
 
 the Iowa Supreme Court examined Iowa Code § 670.4(3), which is substantially similar to NRS 41.032(2).
 

 [22]
 

 Goodman, 587 N.W.2d at 239.
 

 [23]
 

 Id.
 

 [24]
 

 Id.
 

 [25]
 

 NRS 244.3605(5).
 

 [26]
 

 Martinez
 
 v.
 
 Maruszczak,
 
 123 Nev. 433, 445, 168 P.3d 720, 728 (2007) (quoting
 
 United States
 
 v.
 
 Gaubert,
 
 499 U.S. 315, 322-23 (1991)) (explaining that if the challenged conduct satisfies the first criterion, the court must then consider the second criterion to determine whether the nature of the action taken is susceptible to policy analysis and thus entitled to immunity).
 

 [27]
 

 Id.
 
 at 447, 168 P.3d at 729.
 

 [28]
 

 587 N.W.2d at 239-40.
 

 [29]
 

 Id.
 
 at 240.
 

 [30]
 

 See id.
 
 at 239-40.
 

 [31]
 

 See id.
 
 at 238 (noting that when a statute or regulation vests discretion in a government employee, ‘“the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.’ ” (quoting
 
 Gaubert,
 
 499 U.S. at 324)).
 

 [32]
 

 To the extent that Ransdell challenges the district court’s decision rejecting his request for punitive damages, that request properly was rejected, since the claims on which his request was based were resolved appropriately in favor of the county.
 

 [33]
 

 Vacation Village
 
 v.
 
 Hitachi America,
 
 110 Nev. 481, 484, 874 P.2d 744, 746 (1994).
 

 [34]
 

 Edgar v. Wagner,
 
 101 Nev. 226, 227, 699 P.2d 110, 111 (1985).
 

 [35]
 

 See Breliant
 
 v.
 
 Preferred Equities Corp.,
 
 109 Nev. 842, 845, 858 P.2d 1258, 1260 (1993).
 

 [36]
 

 Hampe v. Foote,
 
 118 Nev. 405, 408, 47 P.3d 438, 439 (2002),
 
 abrogated in part by Buzz Stew, LLC v. City of N. Las Vegas,
 
 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008).
 

 [37]
 

 See Sustainable Growth v. Jumpers, LLC,
 
 122 Nev. 53, 71, 128 P.3d 452, 465 (2006).
 

 [38]
 

 Matter of
 
 T.R., 119 Nev. 646, 652, 80 P.3d 1276, 1280 (2003) (quoting
 
 Hoffman Estates
 
 v.
 
 Flipside, Hoffman Estates,
 
 455 U.S. 489, 497 (1982)).
 

 [39]
 

 Hoffinan Estates,
 
 455 U.S. at 495.
 

 [40]
 

 See City of Costa Mesa
 
 v.
 
 Soffer,
 
 13 Cal. Rptr. 2d 735, 740 (Ct. App. 1992).
 

 [41]
 

 See Com. v. Fossa,
 
 576 N.E.2d 712, 713 (Mass. App. Ct. 1991) (concluding that the statutory words “junked,” “inoperative,” “rusted,” and “dismantled” convey well-recognized meaning, and “[w]hen afforded the presumption of validity to which municipal laws are entitled against a claim of unconstitutional vagueness, the ordinance in question handily survives judicial scrutiny” (citations omitted));
 
 Soffer,
 
 13 Cal. Rptr. 2d at 740 (determining that city ordinance allowing for the abatement of “inoperative” vehicles was not unconstitutionally vague).
 

 [42]
 

 See City of Las Vegas
 
 v.
 
 1017 S. Main Corp.,
 
 110 Nev. 1227, 1235, 885 P.2d 552, 556 (1994) (quoting
 
 Allen v. State,
 
 100 Nev. 130, 135, 676 P.2d 792, 795 (1984)).
 

 [43]
 

 See Cairns v. Sheriff,
 
 89 Nev. 113, 115, 508 P.2d 1015, 1017 (1973).
 

 [44]
 

 See Wood
 
 v.
 
 Safeway, Inc.,
 
 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).
 

 [45]
 

 Id.
 

 [46]
 

 Id.
 
 at 731, 121 P.3d at 1030-31.
 

 [47]
 

 The district court noted that several exhibits were attached to the affidavit in support of the warrant, including complaints that the County had received from neighbors and several photographs of the property.
 

 [48]
 

 See
 
 NRS 244.3605; Clark County Code Ch. 11.06.
 

 [49]
 

 Wood,
 
 121 Nev. at 731, 121 P.3d at 1030-31;
 
 see Maiola v.
 
 State, 120 Nev. 671, 675, 99 P.3d 227, 229 (2004) (noting that procedural due process “requires notice and an opportunity to be heard”); cf.
 
 Freeman v. City of Dallas,
 
 242 F.3d 642, 653 (5th Cir. 2001) (recognizing that an ordinance comports with due process if it includes standards that afford property owners with the opportunity to contest a municipality’s determination of noncompliance, to repair their property, or to seek other remedies, and that includes reasonable notice to and time limits upon landowners’ actions, hearing possibilities, and judicial review in state court under typical criteria for review of administrative actions).