132 Nev., Advance Opinion 35

# IN THE SUPREME COURT OF THE STATE OF NEVADA

HORIZONS AT SEVEN HILLS
HOMEOWNERS ASSOCIATION,
Appellant,
vs.
IKON HOLDINGS, LLC, A NEVADA
LIMITED LIABILITY COMPANY,
Respondent.

No. 63178

**FILED**

APR 28 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK



Appeal from a district court judgment in a real property action. Eighth Judicial District Court, Clark County; Mark R. Denton, Judge.

*Affirmed in part and reversed in part.*

Holland & Hart, LLP, and Patrick J. Reilly and Nicole E. Lovelock, Las Vegas; Alverson, Taylor, Mortensen & Sanders and Kurt R. Bonds, Las Vegas,
for Appellant.

Adams Law Group and James R. Adams, Las Vegas; Puoy K. Premsrirut, Inc., and Puoy K. Premsrirut, Las Vegas,
for Respondent.

Adam Paul Laxalt, Attorney General, and Michelle D. Briggs, Senior Deputy Attorney General, Carson City,
for Amicus Curiae State, Department of Business and Industry.

Kemp, Jones & Coulthard, LLP, and J. Randall Jones, Carol L. Harris, and Nathanael R. Rulis, Las Vegas,
for Amicus Curiae Community Association Management Executive Officers, Inc.

6/30/16: Corrected per letter to publishers. CT

16-13324

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we determine whether a superpriority lien for common expense assessments pursuant to NRS 116.3116(2)[2] includes collection fees and foreclosure costs incurred by a homeowners' association (HOA). We conclude that it does not. Additionally, we consider whether an HOA's covenants, conditions, and restrictions (CC&Rs) that purport to create a superpriority lien covering certain fees and costs over six months preceding foreclosure are superseded by the terms of the superpriority lien created by NRS 116.3116(2). We conclude that the superpriority lien in the CC&Rs is superseded by NRS 116.3116(2), thus affirming in part and reversing in part the district court's decision.

## FACTS AND PROCEDURAL HISTORY

The property at issue in this case is located in Horizons at Seven Hills Ranch, a common-interest community as defined in NRS Chapter 116, operated and managed by appellant Horizons at Seven Hills Homeowners Association (Horizons). As a common-interest community, Horizons has the ability to collect and charge assessments, and administer and enforce the CC&Rs upon the unit owners, for the purpose of benefiting the community. See NRS 116.3115.

---

[1]The Honorable Ron Parraguirre, Chief Justice, voluntarily recused himself from participation in the decision of this matter.

[2]In 2015, the Legislature amended NRS 116.3116(5) to include certain fees and costs in superpriority liens. 2015 Nev. Stat., ch. 266, § 1, at 1333. Any discussion in this opinion related to this statute refers to the statute in effect at the time the underlying cause of action arose.

Horizons recorded its Declaration of CC&Rs in July 2005. Later that year, Hawley McIntosh purchased a home located within the common-interest community. In June 2009, McIntosh became delinquent on his first mortgage payments, and his first mortgage lender, OneWest Bank FSB, recorded a notice of default that same month. In August 2009, Horizons recorded a notice of default against McIntosh for nonpayment of association assessments and other costs in the amount of roughly $4,300. Before Horizons could foreclose, OneWest foreclosed on McIntosh's home in June 2010, holding a foreclosure auction on the same day, at which Scott Ludwig purchased the property. Ludwig transferred the property by quitclaim deed to respondent Ikon Holdings, LLC (Ikon) later that year.

Horizons contacted Ikon and explained that Ikon acquired the property subject to Horizon's unextinguished superpriority lien. Horizons demanded roughly $6,000 to extinguish the lien, which, in addition to unpaid assessments, included roughly $2,700 in collection fees and foreclosure costs. In response, Ikon acknowledged that it acquired the property subject to Horizon's superpriority lien, but it disagreed that the lien included nine months rather than six months of unpaid assessments or the collection fees and foreclosure costs that Horizons was seeking to recoup.

When the parties were unable to resolve the matter, Ikon filed the underlying declaratory relief action. In particular, Ikon sought a ruling that, under NRS 116.3116(2), the superpriority portion of an HOA's lien consists of nine months' (or alternatively six months' based on the CC&Rs) worth of assessments and does not include collection fees and foreclosure costs. Horizons opposed the motion, arguing that NRS 116.3116(2)'s superpriority provision necessarily includes nine months of

assessments and collection fees and foreclosure costs. The district court granted Ikon partial declaratory relief, reasoning that Horizons' CC&Rs limited its superpriority lien to an amount equal to six months of assessments, which did not offend NRS 116.3116(2)'s superpriority provision providing for nine months of assessments. Horizons now appeals.

On appeal, Horizons contends it is owed nine months of unpaid assessments totaling $1,657.50 and $1,592 in collection fees and foreclosure costs.[3] Although Ikon does not dispute that it owes six months of unpaid HOA dues owed at the time of the foreclosure sale, it does dispute whether Horizons is entitled to an additional three months of HOA dues or the collection fees and foreclosure costs.

## DISCUSSION

*The superpriority lien under NRS 116.3116(2) does not include fees or collection costs related to foreclosure*

Horizons and amicus curiae Community Association Management Executive Officers, Inc., argue that in addition to HOA dues, the superpriority lien[4] includes an additional amount for collection fees and foreclosure costs incurred during the nine months prior to a foreclosure sale. Horizons contends these collection fees and foreclosure

---

[3]While Horizons did not foreclose on McIntosh, it expended money preparing for such a foreclosure.

[4]When an HOA forecloses on a property, the pre-2015 amendments of NRS 116.31164(3)(c) and NRS 116.3116(8) allowed for the recoupment of fees and costs. However, because Horizons did not foreclose on the property, NRS 116.31164(3)(c) and NRS 116.3116(8) are not implicated in this decision.

costs encompass fees for collecting past due assessments, such as third-party collection agency charges, and "trustee costs and publication costs in advance of a foreclosure sale." Horizons further contends that canons of statutory interpretation dictate that the superpriority lien includes these fees and costs, and that NRS 116.3116(2) must be read in conjunction with NAC 116.470. Ikon, along with amicus curiae Department of Business and Industry, Real Estate Division (NRED), counter that these fees and costs are not collectible under NRS 116.3116(2).

### Standard of review

Questions of statutory construction are reviewed de novo. *Ransdell v. Clark Cty.*, 124 Nev. 847, 854, 192 P.3d 756, 761 (2008). When interpreting an ambiguous statute, this court attempts to ascertain the Legislature's intent. *Chanos v. Nev. Tax Comm'n*, 124 Nev. 232, 240, 181 P.3d 675, 681 (2008). To determine the Legislature's intent, we look to "legislative history, reason, and considerations of public policy." *Id.*

### NRS 116.3116

NRS 116.3116(1) confers to an HOA a lien on a homeowner's unit for unpaid assessments, construction penalties, and fines levied against the unit. NRS 116.3116(2) establishes the priority of that lien, splitting the lien into two pieces—"a superpriority piece and a subpriority piece." *SFR Invs. Pool 1 v. U.S. Bank, N.A.*, 130 Nev., Adv. Op. 75, 334 P.3d 408, 411 (2014). The superpriority lien

> is ... prior to all security interests ... to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately

SUPREME COURT
OF
NEVADA

(O) 1947A

preceding institution of an action to enforce the lien.

NRS 116.3116(2). *SFR* characterized the superpriority piece as including "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges."[5] 130 Nev., Adv. Op. 75, 334 P.3d at 411.

Horizons argues that based on persuasive caselaw and on rules of statutory construction, NRS 116.3116(2) provides for a look-back provision, designed to place it in the same position it would have been over the previous nine months, but for the default. We are not persuaded by this argument.

To support its position, Horizons argues that this court should adopt the holding in *Hudson House Condominium Ass'n, Inc. v. Brooks*, 611 A.2d 862 (Conn. 1992). In *Hudson House*, a condominium association was "foreclos[ing] a statutory lien for delinquent common expense assessments due on a condominium unit owned by the named defendant." *Id.* at 864. The association asserted that pursuant to the superpriority lien,[6] it was owed an amount equal to the common expense assessments, as well as interest, collection costs, and attorney fees. *Id.* at 864, 866. The court concluded that the superpriority lien included interest, collection costs, and attorney fees. It reasoned that a Connecticut statute stating that "a judgment or decree in any action brought under this section shall

---

[5]Pursuant to NRS 116.310312(4), "maintenance or abatement" costs include "reasonable inspection fees, notification and collection costs and interest." We note, however, that these are not the type of collection costs relating to foreclosure that are in dispute here.

[6]The Connecticut statutes in *Hudson House* are identical, for the purposes of this analysis, to the Nevada statutes.

include costs and reasonable attorney[ ] fees for the prevailing party" authorized these fees and costs to be within the superpriority lien because the court believed this to be the only "reasonable and rational result." *Id.* at 866 (internal quotations omitted).

We disagree with *Hudson House*'s holding for three reasons. First, the court did not conduct a statutory analysis of the superpriority lien language. Neither NRS 116.3116(2) nor the Connecticut statute creating the superpriority lien mention collection fees and foreclosure costs, and the statutes specifically provide that the superpriority lien is limited to "the extent of the assessments for common expenses." NRS 116.3116(2); *see also Hudson House*, 611 A.2d at 863 n.1 (quoting the Connecticut statute: "to the extent of the common expense assessments").

Second, *Hudson House* relied on the policy concern that because common expense assessments are often small, and the prioritized portion of the lien is typically the only collectible portion for an HOA, "it seems highly unlikely that the legislature would have authorized such foreclosure proceedings without including the costs of collection in the sum entitled to a priority." *Id.* at 866. Horizons makes similar arguments: that limiting the superpriority lien to only nine months of unpaid assessments leads to absurd results and renders the statute meaningless because foreclosure will often be economically unfeasible for HOAs. We are not persuaded by this line of reasoning. While we recognize that collection fees and costs may be incurred in a foreclosure, the Legislature has the authority to determine the definition of a superprioity lien and may provide for the recovery of collection fees and costs under different provisions of the statutory scheme. *See, e.g.*, NRS 116.31164(3)(c) (2005) (providing for priority to the selling party on certain fees and costs). But

that legislative choice does not render the definition of a superpriority lien absurd.

Third, in *Hudson House*, the association brought an action to judicially foreclose on the property, entitling it to a "judgment or decree." 611 A.2d at 864. In effect, the court found that the association was the prevailing party and, on that basis, was entitled to the recovery of the costs and fees under the Connecticut statute.

*NAC 116.470*

Horizons further contends that NAC 116.470 must be read in conjunction with NRS 116.3116(2). NAC 116.470 sets a cap of $1,950 that applies in most foreclosure sales. Horizons argues that if NRS 116.3116(2) is interpreted to not include collection fees and foreclosure costs, it will contradict NAC 116.470 by removing the need for a cap. We interpret "statutes within a statutory scheme harmoniously with one another to avoid an unreasonable or absurd result." *Nev. Attorney for Injured Workers v. Nev. Self-Insurers Ass'n*, 126 Nev. 74, 84, 225 P.3d 1265, 1271 (2010) (internal quotations omitted). Additionally, "administrative regulations cannot contradict the statute they are designed to implement." *Id.* at 83, 225 P.3d at 1271 (internal quotations omitted).

We conclude that NAC 116.470 and NRS 116.3116(2) can easily be reconciled. Interpreting the superpriority lien to exclude collection fees and foreclosure costs does not preclude fees and costs from being incurred, up to the cap. Such an interpretation of NRS 116.3116(2) only speaks to the priority in which those fees and costs can be collected. NAC 116.470 simply provides for a cap on fees and costs but does not speak to priority.

*Legislative history*

A review of the legislative history further demonstrates that the Legislature did not intend for collection fees and foreclosure costs incurred to be included in NRS 116.3116(2)'s superpriority lien. NRS 116.3116 comes from the Uniform Common Interest Ownership Act (UCIOA) of 1982, which is codified in the Nevada Revised Statutes as NRS Chapter 116. *See* NRS 116.001. Section 3-116 of the UCIOA is substantially similar to NRS 116.3116. *Compare* UCIOA § 3-116, 7 U.L.A. 374-81 (2008), *with* NRS 116.3116. The 1994 version of section 3-116 of the UCIOA included only "common expense assessments based on the periodic budget" as part of the superpriority lien. UCIOA § 3-116(b), 7 U.L.A. 569 (1994). In 2008, amendments were made to section 3-116 to also include "reasonable attorney[ ] fees and costs incurred by the association in foreclosing the association's lien" as part of the superpriority lien. UCIOA § 3-116(c), 7 U.L.A. 374-75 (2008). These are exactly the type of collection costs sought by Horizons. However, while a similar amendment to NRS 116.3116 to add collection costs relating to foreclosure to the superpriority lien was considered by the Legislature in both 2009 and 2011, no such amendment was adopted.

Specifically, in 2009, the Legislature amended NRS Chapter 116 by adding a new section, NRS 116.310313, permitting HOAs to charge homeowners collection costs in advance of foreclosure. A.B. 350, 75th Leg. (Nev. 2009); 2009 Nev. Stat., ch. 485, § 1.7, at 2795. However, NRS 116.3116 was not amended at that time to reflect the addition of NRS 116.310313. In 2011, Senate Bill (S.B.) 174 was introduced in an attempt to change NRS 116.3116(1) and (2) by adding language allowing the collection costs permitted under NRS 116.310313 to become part of the

SUPREME COURT
OF
NEVADA

9

(O) 1947A

HOA's lien and the superpriority lien. S.B. 174, 76th Leg. (Nev. 2011) (as introduced). The bill was amended during the session, removing the collection costs permitted under NRS 116.310313 from NRS 116.3116(1) and adding language that set a dollar limit for the collection costs as part of the superpriority lien under NRS 116.3116(2). S.B. 174, 76th Leg., (Nev. 2011) (first reprint). Although the Senate Judiciary Committee approved the amended bill, the Assembly Judiciary Committee took no action, leaving NRS 116.3116(1) and (2) unchanged. S.B. 174, 76th Leg. (Nev. 2011) (Bill Summary).

Because the "[c]osts of collecting" as set forth in NRS 116.310313 was omitted from NRS 116.3116(2), we must presume the Legislature did not intend for such costs to be included as part of an HOA's superpriority lien.[7] *See Dep't of Taxation v. DaimlerChrysler Servs. N. Am., LLC*, 121 Nev. 541, 548, 119 P.3d 135, 139 (2005) ("[O]missions of subject matters from statutory provisions are presumed to have been intentional."); *see also Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967); 2A Norman J. Singer & J.D. Shambie Singer, *Statutes & Statutory Constr.* § 47:23 (7th ed. 2014) ("The maxim *expressio unius est exclusio alterius* . . . instructs that, where a statute designates a form of conduct, the manner of its performance and operation, and the persons

---

[7]Bolstering this conclusion, the legislative history regarding the 2015 amendment to the statute indicates on many occasions that the change was a revision, not simply a clarification. *See, e.g.*, S.B. 306, 78th Leg. (Nev. 2015) (as introduced); Hearing on S.B. 306 Before the Senate Judiciary Comm., 78th Leg. (Nev. April 7, 2015) (statement by Senator Aaron D. Ford discussing proposed amendments to the statutory provisions governing HOA liens).

and things to which it refers, courts should infer that all omissions were intentional exclusions.").

*Advisory opinions*

Horizons urges this court to give deference to an advisory opinion from the Commission for Common Interest Communities and Condominium Hotels (CCICCH), in which it determined that "Nevada law authorizes the collection of 'charges for late payment of assessments' as a portion of the super lien amount." 10-01 Op. CCICCH 1, 12-13 (2010). Horizons advocates that this is the correct interpretation of the statute. In contrast, Ikon argues the CCICCH has no legal authority to publish advisory opinions because such authority is strictly reserved by statute for NRED. As such, Ikon asserts this court should follow the advisory opinion issued by NRED in December 2012. *See* 13-01 Op. NRED (2012).

As we noted in *SFR*, NRED "is charged with administering Chapter 116." 130 Nev., Adv. Op. 75, 334 P.3d at 416; *see also* NRS 116.615. That administration includes issuing "advisory opinions as to the applicability or interpretation of . . . [a]ny provision of this chapter." NRS 116.623(1)(a).

Among the questions NRED was asked to address concerning NRS 116.3116 in its December 2012 opinion was whether "the portion of the association's lien which is superior to a unit's first security interest (referred to as the 'super priority lien') contain[s] 'costs of collecting' defined by NRS 116.310313[.]" 13-01 Op. NRED 1 (2012). NRED answered this question in the negative and initially stated that

> [t]he association's lien does not include "costs of collecting" defined by NRS 116.310313, so the super priority portion of the lien may not include such costs. NRS 116.310313 does not say such charges are a lien on the unit, and NRS 116.3116

does not make such charges part of the association's lien.

*Id.* After conducting a thorough analysis of the legislative history behind NRS 116.3116, NRED concluded the "Legislature's actions in the 2009 and 2011 sessions are indicative of its intent not to make costs of collecting part of the lien," and thus, "the association's lien does not include 'costs of collecting' as defined by NRS 116.310313." *Id.* at 7. We find NRED's interpretation of NRS 116.3116, including its legislative history analysis, persuasive.[8]

---

[8]The parties also dispute whether the superpriority lien statute includes late fees, or charges and/or interest. NRED also considered this issue in its advisory opinion and determined that,

> while the association's *lien* may include any penalties, fees, charges, late charges, fines and interest charged pursuant to NRS 116.3102(1)(j) to (n), inclusive, the total amount of the *super priority lien* attributed to assessments is no more than 9 months of the monthly assessment reflected in the association's budget. *Association budgets do not reflect late charges or interest attributed to an anticipated delinquent owner, so there is no basis to conclude that such charges could be included in the super priority lien or in addition to the assessments.* Such extraneous charges are not included in the association's super priority lien.

13-01 Op. NRED 12 (2012) (third emphasis added). We further note there is no mention in NRS 116.3116, or the other provisions of NRS Chapter 116 to which that statute refers, that late fees or interest relating to foreclosure collection costs may be included as part of the HOA's superpriority lien. Thus, we must presume the Legislature intentionally excluded late fees and interest from the superpriority lien statute. *See DaimlerChrysler*, 121 Nev. at 548, 119 P.3d at 139 (stating that "omissions

*continued on next page...*

Taking into consideration the legislative intent, the statute's text, and statutory construction principles, we conclude the superpriority lien granted by NRS 116.3116(2) does not include an amount for collection fees and foreclosure costs incurred; rather it is limited to an amount equal to the common expense assessments due during the nine months before foreclosure.[9]

*Horizons' CC&Rs are superseded by NRS 116.3116*

Horizons contends that there are two separate liens—a statutory lien under NRS 116.3116 and a contractual lien derived from Horizons' CC&Rs. Horizons argues the contractual lien created in the

---

*...continued*

of subject matters from statutory provisions are presumed to have been intentional").

[9]In *Shadow Wood Homeowners Ass'n, Inc. v. New York Community Bancorp, Inc.*, we noted "that the district court erred in limiting the HOA lien amount to nine months of common expense assessments." 132 Nev., Adv. Op. 5, 366 P.3d 1105, 1107 (2016). In the context of *Shadow Wood*, we were determining the extent of an HOA lien when a bank foreclosed its first security interest and became the *owner* of the foreclosed property. *Id.* The superpriority lien included nine months of pre-foreclosure past due common expense assessments. *Id.* at 1113; *see also* NRS 116.3116(2) (stating that the superpriority lien is "prior to all security interests," including "[a] first security interest on the unit"). After the bank purchased the property, it failed to pay common expense assessments due (at which time the HOA foreclosed on the property). *Shadow Wood*, 132 Nev., Adv. Op. 5, 366 P.3d at 1113. NRS 116.3116(2)'s nine-month superpriority lien did not affect the amount the bank owed the HOA after the bank foreclosed because the "first security interest" was extinguished, and the superpriority lien does not limit amounts due from a property owner to an HOA. Accordingly, in *Shadow Wood*, the HOA was entitled to recover the superpriority lien amounts accrued for nine months prior to the bank's foreclosure, and it was entitled to assessments, fees, and costs accrued after the bank purchased the property. *Id.*

CC&Rs allows it to have superpriority on collection fees and foreclosure costs, regardless of NRS 116.3116(2). Ikon counters that NRS 116.1206 supersedes the CC&Rs as to costs and fees, capping the superpriority lien to the amount allowed under NRS 116.3116, but argues that the time frame provided in the CC&Rs—six months—overcomes NRS 116.3116(2)'s allowance of nine months of common expense assessments. The district court concluded that there was only one superpriority lien, which included "interest, costs and other fees . . . as long as the prioritized portion of the lien does not exceed an amount equal to [six] months of assessments as noted in Sections 7.8 and 7.9 of the CC&R[s]."

"The rules of construction governing the interpretation of contracts apply to the interpretation of restrictive covenants for real property. When there is no dispute of fact, a contract's interpretation is a legal question subject to de novo review." *Diaz v. Ferne*, 120 Nev. 70, 73, 84 P.3d 664, 665-66 (2004).

Horizons' CC&Rs state, in pertinent part, as follows:

Section 7.8 . . . The lien of the assessments, including interest and costs, shall be subordinate to the lien of any [f]irst [m]ortgage upon the [u]nit (except to the extent of [a]nnual [a]ssessments which would have become due in the absence of acceleration during the six (6) months immediately preceding institution of an action to enforce the lien).

Section 7.9 . . . A lien for assessments, including interest, costs, and attorney[ ] fees, as provided for herein, shall be prior to all other liens and [u] encumbrances on a Unit, except for: (a) liens and encumbrances [r]ecorded before the [d]eclaration was [r]ecorded; (b) a first [m]ortgage [r]ecorded before the delinquency of the assessment sought to be enforced (except to the extent of [a]nnual

SUPREME COURT
OF
NEVADA

(O) 1947A

[a]ssessments which would have become due in the absence of acceleration during the six (6) months immediately preceding institution of an action to enforce the lien)[;] and (c) liens for real estate taxes and other governmental charges, and is otherwise subject to NRS § 116.3116. . . . Where the [b]eneficiary of a [f]irst [m]ortgage of [r]ecord or other purchaser of a [u]nit obtains title pursuant to a judicial or non-judicial foreclosure . . . the [p]erson who obtains title and his or her successors and assigns shall not be liable for the share of the [c]ommon [e]xpenses or assessments by the [HOA] chargeable to such [u]nit which became due prior to the acquisition of title to such [u]nit by such [p]erson (except to the extent of [a]nnual [a]ssessments which would have become due in the absence of acceleration during the six (6) months immediately preceding institution of an action to enforce the lien).

This language indicates that a lien is created covering certain fees and costs over six months preceding foreclosure. However, NRS 116.1206(1) provides:

> Any provision contained in a declaration, bylaw or other governing document of a common-interest community that violates the provisions of this chapter:
>
> (a) Shall be deemed to conform with those provisions by operation of law, and any such declaration, bylaw or other governing document is not required to be amended to conform to those provisions.
>
> (b) *Is superseded by the provisions of this chapter*, regardless of whether the provision contained in the declaration, bylaw or other governing document became effective before the enactment of the provision of this chapter that is being violated.

(Emphasis added.)

SUPREME COURT
OF
NEVADA

(O) 1947A

15

While we do not comment on the validity of the CC&Rs' lien in general, to the extent that Horizons' CC&Rs purport to create a six-month superpriority lien that ~~certain~~ includes fees and costs, we conclude that NRS 116.1206(1) negates the effect of those provisions because they violate NRS 116.3116(2)'s plain language by (1) limiting the prioritized portion to six months when the statute allows for nine months, and (2) including certain fees and costs. Accordingly, we conclude that the district court's limitation of the superpriority lien to six months of common expense assessments and its inclusion of certain fees and costs in the superpriority lien was error.

## CONCLUSION

For the reasons set forth above, we conclude that a superpriority lien pursuant to NRS 116.3116(2) does not include an additional amount for the collection fees and foreclosure costs that an HOA incurs preceding a foreclosure sale; rather, it is limited to an amount equal to nine months of common expense assessments. We further conclude that, to the extent that Horizons' CC&R provisions can be read as creating a superpriority lien covering certain fees and costs and a six-month time frame, those provisions are superseded by statute and are thus negated. Accordingly, we affirm that portion of the district court's order granting partial declaratory relief in favor of Ikon to the extent that it can be construed as prohibiting Horizons from including fees and costs in its superpriority lien. But we reverse that portion of the district court's order

that limited the superpriority lien to six months of common expense assessments and allowed fees and costs to be included if the outstanding monthly assessments did not exceed six months.

                                               _____ , J.
                                                      Hardesty

We concur:

_____ , J.
Douglas

_____ , J.
Cherry

_____ , J.
Saitta

_____ , J.
Gibbons

_____ , J.
Pickering