ROBERT QUINLAN AND PATRICIA QUINLAN, APPELLANTS, *v.* MID CENTURY INSURANCE COMPANY, RESPONDENT.

No. 17406

TAMARA SERVICE, ROBERT L. SERVICE, CASEY J. PIERETTI, APPELLANTS AND CROSS-RESPONDENTS, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND LES KNOTT, RESPONDENTS AND CROSS-APPELLANTS.

No. 17678

August 27, 1987                    741 P.2d 822

[Rehearing denied October 7, 1987]

*Bradley & Drendel,* and *Joseph Bradley; J. P. Reynolds,* Reno, for Appellants Robert Quinlan, Patricia Quinlan, and Appellants and Cross-Respondents Tamara Service, Robert L. Service and Casey J. Pieretti.

*Stokes, Terry, Winter and Wessel,* Carson City, for Appellants and Cross-Respondents Tamara Service, Robert L. Service and Casey J. Pieretti.

*Hibbs, Roberts, Lemons, Grundy & Eisenberg,* Reno, and *Frank W. Daykin,* Carson City, for Respondent Mid Century Insurance Company.

*Jon Douglas Benson* and *Robert Enzenberger,* Reno, for Respondents and Cross-Appellants State Farm Mutual Automobile Insurance Company and Les Knott.

*Peter Chase Neumann,* Reno, for Amicus Curiae Nevada Trial Lawyers Association.

## OPINION

*Per Curiam:*

### Facts of Quinlan v. Mid Century

On May 30, 1981, appellant's son, Paul Quinlan, was killed in an automobile accident. Quinlan had an automobile insurance policy which provided for liability coverage of $100,000/$300,000, and uninsured motorist coverage of $15,000/$30,000.

The owner of the vehicle which killed Paul Quinlan had insufficient insurance to compensate appellants for the loss of their son. Respondent Mid Century Insurance Company tendered $15,000 in uninsured motorist coverage, but appellants sought to reform the policy to indicate that the uninsured motorist coverage was equal to the liability coverage.

On two occasions prior to the accident, Mid Century has sent premium renewal notices informing Quinlan that higher uninsured motorist coverage could be purchased. The renewal notices each contained the following notice in bold capital letters:

> Did you know that you may now have uninsured motorist coverage in amounts up to your bodily injury liability limits? If interested, contact your agent.

Quinlan renewed his insurance policy after he received each of these notices, but made no inquiry with respect to increasing his uninsured motorist coverage. The facts were undisputed before the district court and summary judgment was entered in favor of Mid Century.

### Facts of Service v. State Farm

Tamara Service had insured her vehicles through State Farm Mutual Automobile Insurance Company and its agent, Les Knott, for several years. In mid-1983, Service spoke briefly with Knott about the coverage on her vehicles and raised her liability limits from $50,000/$100,000 to $100,000/$300,000 and her medical

coverage from $10,000 to $25,000. Her uninsured motorist coverage was left at the previous level of $50,000/$100,000.[1] Service later dropped several vehicles from the policy, then added Robert L. Service as a named insured on one vehicle. The policy was renewed several times after the conversation with Knott.

On November 3, 1985, Mrs. Service's son and a friend were pushing a vehicle when they were struck from behind by a car driven by an uninsured motorist. The son sustained numerous injuries to his legs, and one leg was partially amputated as a result. State Farm paid $25,000 for medical payments and $50,000 under uninsured motorist coverage; Service reserved the right to bring an action to determine whether additional coverage should be afforded.

Service maintained that the uninsured motorist limits of the policy should have been reformed to the liability limits of $100,000/$300,000 through operation of law for State Farm's failure to comply with the requirements of NRS 687B.145(2). The district court ruled on summary judgment that State Farm had made an adequate offer of additional coverage, but also held that the "per accident" limits of the policy applied to Service's son. Both parties appeal.

## Issue Common to Both Appeals

These appeals center on the meaning of the term "must offer" in NRS 687B.145(2):

Insurance companies doing business in this state must offer uninsured motorist coverage equal to the limits of bodily injury coverage sold to the individual policyholder. Uninsured motorist coverage must include a provision which enables the insured to recover up to the limits of his own coverage any amount of damages for bodily injury from his insurer which he is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of the bodily injury coverage carried by that owner or operator.

[1]The record indicates that in her telephone conversation with Knott, Service was informed that she could raise her uninsured motorist coverage to her bodily injury liability limits. She was informed that this would be prudent in light of her past experience, and that the increased coverage would cost slightly more. In addition to this telephone conversation, State Farm had sent Service an insert in early 1980 which discussed the possibility of increasing uninsured motorist coverage; an additional offer of increased uninsured motorist coverage was sent during the six-month period between December 1, 1983, and May 31, 1984. Each of these notices included statements indicating that uninsured motorist coverage could be purchased up to the amount of the insured's liability coverage.

Four alternative potential interpretations are offered as to what the phrase "must offer" could mean. First, "must offer" could simply mean that an insurance company must have available, on its menu of coverages, uninsured motorist coverage equal in amount to the liability coverage sold to individual policy holders. Second, "must offer" could mean that an insurance company is required to inform its policy holders through renewal notices and policy addenda, that uninsured motorist coverage equal to the limits of personal liability coverage is available. Third, "must offer" could require a personal, verbal offer to sell enhanced uninsured motorist coverage, but not a specific statement of the additional cost or an explanation of the need for heightened coverage. Fourth, "must offer" could require significantly more, as is exhibited in a four-part test utilized by other jurisdictions. In Cloninger v. National Gen. Ins. Co., 488 N.E.2d 548, 550 (Ill. 1985), the following test was used:

> (1) notification must be commercially reasonable if the offer is made in other than face-to-face negotiations; (2) the limits of the optional coverage must be specified and not set forth in general terms; (3) the insured must be intelligibly advised by the insurer of the nature of the option; and (4) the insurer must advise the insured that the optional coverage is available for relatively modest premium increases.

In order to divine the meaning of "must offer," we have recourse to the wording of the statute, the use of the word "offer" in other Nevada insurance statutes, and the pertinent legislative history. The statute itself is of little help; hence these appeals. In other insurance statutes, the word "offer" is used to instruct an insurance carrier simply to make a certain type of coverage available to an insured.[2] The legislative history indicates an intent to compel insurance carriers to begin providing heightened uninsured motorist coverage as an option.[3] However, to effectuate that intent we conclude that insurance carriers must be required to notify their customers that such coverage is available. The clear and unambiguous language utilized by Mid Century to notify Quinlan of his option to increase his uninsured motorist coverage meets this requirement, as do State Farm's notices coupled with Knott's conversation with Service.

---

[2]*See* NRS 689B.150; 691A.020(1); 695D.200. *See also* 686A.240; 688A.330, .340; 689B.220, .240; 691A.020; 695B.254, .259; 695C.030(7).

[3]*See, e.g., Hearings on A.B. 617 before the Senate Comm. on Commerce and Labor,* 60th Sess. 7-8 (May 7, 1979).

*Cross-Appeal by State Farm Against Tamara Service*

The district court in the *Service* case held that the "each accident" provision of the uninsured motorist coverage was available to the injured son instead of the "each person" coverage because a second person was also injured in the accident. However, the policy unambiguously provided that even if multiple persons were injured, each could receive no more that $50,000, the "per person" figure. Therefore, the court erred.

## Conclusion

The judgments are affirmed with the one exception noted above.