REBECCA J. KHOURY, Individually and on Behalf of Her Minor Children, JENNIFER KHOURY and RYAN KHOURY; BASHIR KHOURY as Executor of the Estate of BASSIM KHOURY, Deceased; CHARLENE CORTNEY, Individually and on Behalf of Her Minor Children, ERIC CORTNEY and DALLAS CORTNEY; RICHARD CLARK as Executor of the Estate of MARTIN F. CORTNEY, Deceased; and CLIFFROSE, INC., a Nevada Corporation, Appellants, v. MARYLAND CASUALTY COMPANY, a Maryland Corporation; BARRY JOHNSON, Respondents.

No. 22497

December 11, 1992                    843 P.2d 822

*Jolley, Urga, Wirth & Woodbury* and *Troy Everett Peyton,* Las Vegas, for Appellants.

*Pearson & Patton* and *George W. Foley, Jr.,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

Bassim Khoury (Khoury) and Martin Cortney were killed in an automobile accident in August 1986 that was the fault of an underinsured driver. Khoury was an owner of Cliffrose, Inc., dba Sure Electric (Sure Electric), and was individually named as an insured on Sure Electric's insurance policy covering four company automobiles. This insurance policy was provided by Northern Insurance Company (Northern), which is commonly owned with the respondent, Maryland Casualty Insurance Company (Maryland Casualty). Although the liability coverage limit of Sure Electric's policy was $1,000,000, the uninsured motorist coverage for each automobile covered was only $30,000. Pursuant to the corporation's insurance policy, Northern paid Khoury's heirs $120,000, representing the total amount of uninsured motorist coverage on each of the four company vehicles.

Khoury's heirs initiated a lawsuit against Maryland Casualty, requesting, among other things, that Khoury's insurance policy be reformed to increase the amount of uninsured/underinsured motorist coverage to the full $1,000,000 amount of Khoury's liability coverage. The heirs argued that they were entitled to this reformation because Maryland Casualty's agents had failed to comply with the requirement of NRS 687B.145(2) that

uninsured/underinsured motorist coverage be offered to insureds up to the limits of their liability coverage. It is not disputed that a written offer of additional coverage was not provided in this case. However, Maryland Casualty submitted the depositions of two of its agents, alleging that although the offer of additional coverage was never set forth in writing, both agents recalled that a verbal offer was made to Khoury.

Maryland Casualty filed a motion for summary judgment on a number of issues, and the district court granted partial summary judgment in favor of Maryland Casualty on the issue of whether the insurance company had met the requirements of NRS 687B.145(2). The judge reasoned that: (1) a verbal offer is sufficient under NRS 687B.145(2) as a matter of law, and (2) appellants had failed to raise a genuine issue of material fact with respect to whether a verbal offer had been made. The district court certified its order as final pursuant to NRCP 54(b), and this appeal followed.

This court has not previously addressed the issue of whether the version of NRS 687B.145(2) in effect at the time Khoury purchased his insurance required that insureds be informed in writing of the availability of additional uninsured/underinsured motorist coverage. This version of NRS 687B.145(2) provided:

> Insurance companies doing business in this state *must offer* uninsured motorist coverage equal to the limits of bodily injury coverage sold to the individual policyholder. Uninsured motorist coverage must include a provision which enables the insured to recover up to the limits of his own coverage any amount of damages for bodily injury from his insurer which he is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of the bodily injury coverage carried by that owner or operator.

(*Emphasis added.*) Maryland Casualty argues that the plain language of former NRS 687B.145(2) does not specify the type of notice required, and that therefore, any type of notice is sufficient. Khoury argues to the contrary, and a consideration of the term "must offer" is necessary.

In Quinlan v. Mid Century Ins., 103 Nev. 399, 741 P.2d 822 (1987), the meaning of the words "must offer" was considered by this court with respect to the adequacy of notification provisions in insurance renewal notices. *Quinlan* consolidated two companion cases, the first of which involved an insured who had received notice of the availability of additional uninsured/ underinsured motorist coverage through written flyers included with two of his renewal notices. *Id.* at 401, 741 P.2d at 823. The

insured in the second case received similar notification through two mailings and was also informed of the additional coverage option during a telephone conversation with her agent. *Id.* at 402 n.1, 741 P.2d at 824 n.1. We concluded that the statute required some type of affirmative notification, and that the notice provided in the two companion cases was sufficient to satisfy this requirement. *Id.* at 403, 741 P.2d at 825.

Although the scope of *Quinlan* was limited, and we did not address whether the verbal notification provided in one of the companion cases would have been sufficient without the written notices that accompanied it, the legislature reacted to *Quinlan* by passing an amended version of NRS 687B.145(2) in 1989.[1] This version stipulates, among other things, that the offer of additional insurance must be made on a form approved by the insurance commissioner. In discussing the amendments to the provision, Commerce Committees of both the State Assembly and State Senate expressed dissatisfaction with our *Quinlan* decision, apparently interpreting it to mean that we had held that the only thing an insurance company needed to do to comply with the provision was to include a small notice at the bottom of the renewal form using language such as, "You now have the right to buy uninsured coverage equal to bodily injury coverage. Contact your agent for more details." Hearing on A.B. 404 Before the Assembly Commerce Committee, April 7, 1989, p. 2-3; *see also* Hearing on A.B. 404 Before the Senate Committee on Commerce and Labor, May 11, 1989, p. 8.

Legislators' statements are entitled to consideration in construing a statute when they are a reiteration of events leading to the adoption of proposed amendments, rather than an expression of personal opinion. *See* A-NLV Cab Co. v. State, Taxicab Authority, 108 Nev. 92, 95, 825 P.2d 585, 587 (1992) (citing Cal. Tchrs. Ass'n v. San Diego Com. College, 621 P.2d 856, 860 (Cal. 1981)). From the legislature's expressed dissatisfaction with our interpretation of pre-1989 NRS 687B.145(2) and from their subsequent amendment of the statute, we infer that their

[1]The amended version of NRS 687B.145(2) states:

> Insurance companies transacting motor vehicle insurance in this state must offer, on a form approved by the commissioner, uninsured and underinsured vehicle coverage in an amount equal to the limits of coverage for bodily injury sold to an insured under a policy of insurance covering the use of a passenger car. The insurer is not required to reoffer the coverage to the insured in any replacement, reinstatement, substitute or amended policy, but the insured may purchase the coverage by requesting it in writing from the insurer. Each renewal must include a copy of the form offering such coverage.

goal in enacting the amendment to NRS 687B.145(2) was to clarify, rather than alter, the degree of notice required. Therefore, we conclude that the intent of the legislature in enacting pre-1989 NRS 687B.145(2) was to require a reasonably thorough explanation of the available coverage. While we refrain from determining that the Legislature meant this notice or explanation of available additional coverage must be in writing, it is obvious that it was intended to place the burden on the insurance company to make a full and complete explanation. Accordingly, we conclude that NRS 687B.145(2) requires an insurance company to prove that the notice of uninsured/underinsured motorist coverage be established by clear and convincing evidence. In determining whether an insurance company has met the burden of establishing the ''must offer'' requirement under NRS 687B.145(2) as effective in 1986, the four-part test we approved in Quinlan v. Mid Century Ins., 103 Nev. 399, 741 P.2d 822 (1987), as modified for this case, should be as follows: (1) notification must be in a commercially reasonable manner; (2) the limits of the optional coverage must be specified and not set forth in general terms; (3) the insured must be intelligibly advised by the insurer of the nature of the option; and (4) the insurer must advise the insured that the optional coverage is available for relatively modest premium increases.

Maryland Casualty has shown that while no written notice was given, two employees of the insurance agency remember explaining the availability of uninsured motorist coverage. This evidence is insufficient, as a matter of law, to establish by clear and convincing evidence that notice was given, and we remand this case to the district court for the trial of this and any other factual issues that remain.

MOWBRAY, C. J., SPRINGER, ROSE and YOUNG, JJ., and CARNAHAN, D. J.[2]

---

[2]The Honorable Lew Carnahan, Judge of the Second Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE THOMAS L. STEFFEN, Justice. Nev. Const. art. VI, § 4.