BARBARA BREITHAUPT, Appellant, v. USAA PROPERTY AND CASUALTY INSURANCE COMPANY, Respondent.

No. 23118

January 20, 1994 867 P.2d 402

*Hale, Lane, Peek, Dennison & Howard* and *Tracy Mathia* and *Robert Martin*, Reno, for Appellant.

*Barker, Gillock, Koning & Brown* and *Bruce Scott Dickinson*, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Barbara Breithaupt ("Breithaupt") brought an action against her insurer, USAA Property and Casualty Insurance Company ("USAA"), seeking reformation of her automobile insurance contract. Breithaupt claimed that USAA failed to comply with the pre-1990 version of NRS 687B.145(2) because USAA did not adequately notify her that she was entitled to purchase uninsured/underinsured motorist ("UM") coverage equal to her coverage for bodily injury.[1] The trial court granted summary judgment for USAA, holding that the notice which USAA gave Breithaupt satisfied the requirements of NRS 687B.145(2). We affirm.

On April 4, 1988, Breithaupt suffered severe and permanent injuries when another driver struck her car from behind. Breithaupt recovered the maximum amount from the driver's insurer, but this amount fell far short of compensating Breithaupt

---

[1]Prior to January 1, 1990, the first sentence of NRS 687B.145(2) stated:

> Insurance companies doing business in this state must offer uninsured motorist coverage equal to the limits of bodily injury coverage sold to the individual policyholder.

Effective January 1, 1990, the legislature amended the first sentence of NRS 687B.145(2) to state:

> Insurance companies transacting motor vehicle insurance in this state must offer, on a form approved by the commissioner, uninsured and underinsured vehicle coverage in an amount equal to the limits of coverage for bodily injury sold to an insured under a policy of insurance covering the use of a passenger car.

The present dispute involves the pre-1990 version of NRS 687B.145(2). Thus, unless otherwise specified, citations to NRS 687B.145(2) refer to the pre-1990 statute.

for her injuries. Breithaupt carried UM coverage with USAA in the amount of $15,000 per person and $30,000 per accident for each of two vehicles. USAA allowed Breithaupt to stack the coverage on her two vehicles and paid her $30,000, the full amount of coverage.

Breithaupt had purchased bodily injury coverage of $300,000 per person and $500,000 per accident from USAA. Breithaupt claims that the court should reform her contract with USAA so that the UM limits of the policy are equal to the limits for bodily injury. *See* Ippolito v. Liberty Mutual, 101 Nev. 376, 379, 705 P.2d 134, 136-37 (1985). Under such a reformed insurance contract, Breithaupt would collect an additional $570,000 from USAA.[2]

In relevant part, NRS 687B.145(2) stated that insurers "must offer uninsured motorist coverage equal to the limits of bodily injury coverage sold to the individual policyholder." In Quinlan v. Mid Century Ins., 103 Nev. 399, 403, 741 P.2d 822, 824-25 (1987), this court acknowledged that the term "must offer" was susceptible to several interpretations, each of which imposed a different duty of notice upon the insurer. The duty which NRS 687B.145(2) could impose upon the insurer ranged from simply making the coverage available, i.e. no duty of notice, to a full disclosure of the nature and cost of the optional coverage. *Id.* Relying upon the legislature's use of "offer" in other insurance statutes, this court concluded that " 'offer' is used to instruct an insurance carrier simply to make a certain type of coverage available to an insured." *Id.,* 741 P.2d at 825. However, to effectuate the legislature's intent "to compel insurance carriers to begin providing heightened uninsured motorist coverage as an option," this court ruled that insurers must "notify their customers that such coverage is available." *Id.* In *Quinlan,* this court held that the following statement included in the insurer's renewal notice satisfied the insurer's obligation under NRS 687B.145(2):

> Did you know that you may now have uninsured motorist coverage in amounts up to your bodily injury liability limits? If interested, contact your agent.

*Quinlan,* 103 Nev. at 401, 741 P.2d at 823.

In the instant case, USAA made a much fuller disclosure

---

[2]A reformed contract of insurance would provide UM coverage of $300,000 per person for each of Breithaupt's two vehicles. Breithaupt hoped to stack the coverage on her two vehicles, thereby entitling her to $600,000 of UM coverage. Having already received $30,000, appellant sought recovery of the remaining $570,000.

regarding UM coverage. The renewal notice which USAA sent Breithaupt included a flyer which described the nature of UM coverage and the minimum UM coverage which an insured was required by law to purchase. Additionally, the flyer contained a section entitled: "Higher limits are available." This portion of the notice discussed factors which an insured should consider in determining the appropriate amount of UM coverage to purchase. The notice then stated:

> If you want to increase your UM coverage, give us your order on the order form on the back of this folder. Available limits are listed in the box to the right.
> IMPORTANT: The UM policy limits you select may *not* exceed the Bodily Injury (BI) liability limits in your policy. If you want to increase your UM to a limit higher than your present BI, please use the order form on the back to increase your BI liability limit.

In a box to the right of this statement, USAA listed "UM Limits Available." This list included UM coverage of $300,000/$500,000. Thus, USAA made available to Breithaupt UM coverage with the same limits as her bodily injury coverage.

Breithaupt contends that USAA's flyer did not satisfy the notice requirement of NRS 687B.145(2) because it was unclear and ambiguous. We agree with Breithaupt that USAA could have made a clearer statement, using affirmative language, to notify Breithaupt of her right to UM coverage equaling her bodily injury coverage. However, we nonetheless believe that the notice is sufficient to inform "the average layman who is untrained in the law or the field of insurance" that UM coverage equal to bodily injury coverage was available. Thompson v. Government Emp. Ins. Co., 592 P.2d 1284, 1288 (Ariz.Ct.App. 1979); *cf.* Bove v. Prudential Ins. Co., 106 Nev. 682, 686, 799 P.2d 1108, 1110 (1990). We conclude that USAA satisfied its duty of notice as this court defined that duty in *Quinlan.*

Breithaupt argues that in Khoury v. Maryland Casualty Co., 108 Nev. 1037, 843 P.2d 822 (1992), this court abandoned the *Quinlan* standard and imposed a greater burden of notice upon insurers, a burden which USAA did not meet. In *Khoury* the issue was whether oral notice of the availability of uninsured motorist coverage was sufficient under NRS 687B.145(2). This court held that the testimony of two employees of the insurance agency was insufficient, as a matter of law, to establish by clear and convincing evidence that notice was given. *Id.* at 1041, 843 P.2d at 824. This court did not reach the issue of the adequacy of the content of the notice. To the extent that dictum in *Khoury*

conflicts with the standard of notice set in *Quinlan,* we disapprove it.

The legislative history behind the 1990 amendment to NRS 687B.145(2) indicates that the legislature specifically intended to overrule *Quinlan* and to impose a greater duty of notice upon insurers. There can be no doubt that the 1990 amendment to NRS 687B.145(2) has rendered *Quinlan's* notice standard inapplicable to insurance transactions which occur after the effective date of the statute.

Breithaupt urges this court to take the legislative response to *Quinlan* a step further. Breithaupt contends that the 1990 amendment of NRS 687B.145(2) indicates that the legislature considered *Quinlan* to be wrongly decided, and that the legislature had always intended the statute to impose a broader duty of disclosure upon insurers. Breithaupt argues that this court should overrule *Quinlan* and retroactively impose a broader duty of disclosure upon insurers. We disagree.

The legislative history behind the 1990 amendment to NRS 687B.145(2) does not support Breithaupt's contention that the legislature considered *Quinlan* to be wrongly decided. Having reviewed the minutes from the various committee meetings, we have not found any indication that the legislature considered NRS 687B.145(2) to impose a duty of notice greater than that which this court announced in *Quinlan;* nowhere in the legislative history does a speaker or committee indicate that *Quinlan* contravened the intent of the 1979 legislature in enacting NRS 687B.145(2).

Furthermore, even if this court concludes that *Quinlan* was wrongly decided, it does not follow that this court would retroactively impose a greater burden of disclosure upon insurers. In determining whether a new rule of law should be limited to prospective application, courts have considered three factors: (1) "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;" (2) the court must "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation;" and (3) courts consider whether retroactive application "could produce substantial inequitable results." Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07 (1971)[3]; Fain

---

[3]In a recent decision, five justices of the United States Supreme Court expressed dissatisfaction with the three-part test announced in *Chevron Oil*

Land & Cattle Co. v. Hassell, 790 P.2d 242, 251 (Ariz. 1990); Matter of Estate of McDowell, 777 P.2d 826, 829 (Kan. 1989); Marinez v. Industrial Comm'n of State, 746 P.2d 552, 556 (Colo. 1987); State, City of Bozeman v. Peterson, 739 P.2d 958, 960 (Mont. 1987); Lopez v. Maez, 651 P.2d 1269, 1276 (N.M. 1982); 21 C.J.S. *Courts* § 148 (1990); *see* Truesdell v. Halliburton Co., Inc., 754 P.2d 236, 239 (Alaska 1988) (court applies similar four-part test). The overruling of a judicial construction of a statute generally will not be given retroactive effect. United States v. Estate of Donnelly, 397 U.S. 286, 295 (1970) ("In rare cases, decisions construing federal statutes might be denied full retroactive effect, as for instance where this Court overrules its own construction of a statute."); 20 Am.Jur.2d *Courts* § 234 (1965).

The instant case falls within the general rule. Retroactive application of NRS 687B.145(2) would not improve pre-1990 consumer awareness of the benefits of purchasing the optional UM coverage. At this late date, insurers do not have the opportunity to comply retroactively with a new and more demanding standard of notice. As a result, insurers such as USAA who complied with Nevada's pre-1990 insurance law are nonetheless subject to potentially large liabilities for failing to meet a standard pronounced years after the fact. Such a result is highly inequitable to insurers and does nothing to promote the objectives of NRS 687B.145(2). Thus, even if *Quinlan* were wrongly decided, we would not give retroactive effect to its overruling.

USAA's flyer satisfied the notice requirement of NRS 687B.145(2) as pronounced by this court in *Quinlan*. Accordingly, we affirm the trial court's grant of summary judgment for USAA.

---

*Co.* American Trucking Assns., Inc. v. Smith, 496 U.S. 167 (1990). Although four justices approved of the test in a plurality opinion, *id.* at 178, a concurring justice argued that in all cases "prospective decision making is incompatible with the judicial role," *id.* at 201 (Scalia, J., concurring), and four dissenting justices argued that application of the three-part test was appropriate only in limited circumstances, *id.* at 218-24 (Stevens, J., dissenting). In spite of the disagreement within the United States Supreme Court, the federal appellate courts have continued to use the three-part test. *Cf.* Gray v. Phillips Petroleum Co., 971 F.2d 591, 596 n.9 (10th Cir. 1992).