NEVADA ATTORNEY FOR INJURED WORKERS, AND STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY, DIVISION OF INDUSTRIAL RELATIONS, APPELLANTS, v. NEVADA SELF-INSURERS ASSOCIATION, RESPONDENT.

No. 51859

February 25, 2010                              225 P.3d 1265

*Nancyann Leeder*, Carson City, for Appellant Nevada Attorney for Injured Workers.

*Nancy E. Wong*, Carson City, for Appellant State of Nevada Department of Business and Industry, Division of Industrial Relations.

*Lionel Sawyer & Collins* and *Malani L. Kotchka*, Las Vegas, for Respondent.

*Anderson & Gruenewald* and *Barbara Gruenewald*, Reno, for Amicus Curiae Nevada Justice Association.

# OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider whether a workers' compensation regulation contradicts the statutory provisions for determining the percentage of an employee's disability resulting from a work-related spinal injury. Respondent Nevada Self-Insurers Association (the Association) filed a petition with appellant State of Nevada Department of Business and Industry, Division of Industrial Relations (DIR), requesting that DIR amend one of its regulations to conform to statutory provisions that prohibit physicians from considering factors other than a person's physical impairment when evaluating a work-related injury. After DIR denied the Association's petition, the Association filed a complaint for declaratory relief in the district court, which the district court granted, concluding that DIR's regulation violated applicable statutory provisions by allowing physicians to consider a person's ability to perform activities of daily living.

NRS 616C.110(1) requires that DIR adopt the fifth edition of the American Medical Association *Guides to the Evaluation of Permanent Impairment* (Linda Cocchiarella & Gunnar B.J. Andersson eds., 5th ed. 2000) (AMA *Guides*), for use in all permanent partial disability examinations. NRS 616C.110(2) also authorizes DIR to amend the applicable regulations, as it deems appropriate, but those amendments "[m]ust not consider any factors other than the degree of physical impairment of the whole man in calculating the entitlement to compensation." NRS 616C.110(2)(c). In accordance with this statute, DIR adopted a regulation incorporating the fifth edition and also adopted NAC 616C.476, which prohibits the utilization of certain chapters of the AMA *Guides* but implicitly permits physicians and chiropractors to consider a person's ability to perform activities of daily living when making a disability impairment rating for spinal injuries.

The Association maintains that language in NRS 616C.110(2)(c) and NRS 616C.490(5) providing that, in calculating an employee's entitlement to compensation for a permanent partial disability, the only factor to be considered is "the degree of physical impairment of the whole man," prohibits consideration of activities of daily living. Thus, the parties to this appeal dispute whether allowing

rating physicians to take into account a spinal injury's impact on a person's activities of daily living is an improper consideration of pain—something other than "physical impairment"—in violation of Nevada law.

We determine that Nevada's statutory scheme and the adoption of the fifth edition of the AMA *Guides* indicate the Legislature's intent that activities of daily living should be taken into consideration when evaluating work-related spinal injuries. We conclude that evaluating activities of daily living is not an improper consideration of subjective pain complaints or chronic pain because, prior to assessing a person's ability to perform activities of daily living, an objectively identifiable spinal injury must be present; thus, NAC 616C.476 does not violate NRS 616C.110(2)(c) or NRS 616C.490(5).[1] Accordingly, we reverse the order of the district court.

## FACTS AND PROCEDURAL HISTORY

### The AMA Guides, fifth edition

The AMA *Guides* was originally published in 1971 to establish "a standardized, objective approach to evaluating medical impairments" for purposes of workers' compensation benefits. AMA *Guides*, *supra*, § 1.1, at 1. The AMA *Guides* set forth impairment criteria that certified rating physicians and chiropractors are able to use to evaluate injured workers and give them an "[i]mpairment percentage[ ] or rating[ ]." *Id.* § 1.2, at 4.

Impairment ratings reflect functional limitation, rather than disability, and demonstrate the severity of the medical condition and the "degree to which the impairment decreases an individual's ability to perform common activities of daily living." *Id.* Activities of daily living do not include work activities, and instead consist of everyday activities such as: self-care, personal hygiene, communication, physical activity (sitting, standing, walking, reclining, climbing stairs), sensory function (taste, smell, tactile feeling,

---

[1]In 2009, the Legislature amended NRS 616C.110 and NRS 616C.490. *See* 2009 Nev. Stat., ch. 500, §§ 3, 7, at 3032-33, 3036-37. This opinion refers to the 2009 versions of NRS 616C.110 and NRS 616C.490. Appellant Nevada Attorney for Injured Workers (NAIW) filed a supplemental reply brief regarding the 2009 amendments. The Association filed a motion to strike the supplemental brief, noting that NAIW did not seek leave from this court to file the supplemental brief. *See* NRAP 28(c). NAIW filed an opposition to the motion to strike and a countermotion for leave to file the supplemental brief. Having reviewed the motion, the opposition, and countermotion for leave, and the supplemental brief, we conclude that the supplemental brief and the 2009 legislative amendments do not assist this court in resolving the issues in this appeal. Accordingly, we grant the Association's motion to strike and deny NAIW's countermotion for leave. The clerk of this court shall strike the supplemental reply brief filed on June 26, 2009.

sight, hearing), nonspecialized hand activity (grasping, lifting, tactile discrimination), travel (riding, driving, flying), sexual function, and sleep. *Id.*

To evaluate the severity that a person's injury has on activities of daily living, a physician applies his or her "knowledge of the patient's medical condition and clinical judgment." *Id.* § 1.2, at 5. Once the rating physician or chiropractor determines the impairment rating, then the insurance provider considers the impairment rating in conjunction with other factors, such as the worker's age, education, and previous experience, to establish disability. *See id.* § 1.2, at 8; NRS 616C.490(2).

Chapter 15 of the fifth edition of the AMA *Guides*, governing injuries of the spine, is most frequently used for impairment evaluations. *See* Steven Babitsky & James J. Mangraviti, Jr., *Understanding the AMA Guides in Workers' Compensation* § 4.05 (4th ed. 2008) (*Understanding the AMA Guides*). Under the more utilized of the two methods for determining spinal impairment ratings,[2] there are different categories of spine impairments. AMA *Guides, supra,* § 15.4, at 384. Distinguishable from the fourth edition of the AMA *Guides*, the fifth edition provides that an impairment rating for each category can be adjusted up to three percent to account for treatment results and their impact on a person's ability to complete activities of daily living. *See Understanding the AMA Guides, supra,* § 4.02(E); *see* AMA *Guides, supra,* § 15.4, at 384. Notably, to award the additional range of up to 3 percent, objective medical evidence must establish that a permanent physical impairment exists. *Understanding the AMA Guides, supra,* § 4.05(C). Physicians are instructed that "[a] complaint of continuing pain does not in itself justify increasing the rating because this is expected with spinal injuries." *Id.*

### Nevada statutes and regulations concerning the fifth edition of the AMA Guides

In 2003, the Legislature mandated that the DIR adopt regulations that incorporate the fifth edition of the AMA *Guides* by reference (Nevada was previously operating under the fourth edition). *See* 2003 Nev. Stat., ch. 305, § 7, at 1671. The Legislature also granted DIR authority to amend its regulations after it adopted the AMA *Guides*, subject to certain limitations. *Id.* at 1671-72. DIR's amendments "(a) [m]ust be consistent with the . . . [AMA *Guides*] . . . ; (b) [m]ust not incorporate any contradictory matter

---

[2]The primary methodology is the diagnosis-related estimate method. AMA *Guides, supra,* § 15.2, at 379. The alternate methodology, the range-of-motion method, is generally utilized when the cause of an impairment is undetermined. *Id.*

from any other edition of the [AMA *Guides*]; and, (c) [m]ust not consider any factors other than the degree of physical impairment of the whole man in calculating the entitlement to compensation." *Id.*; NRS 616C.110(2).

Similarly, NRS 616C.490(5), governing permanent partial disability compensation, echoes NRS 616C.110(2)(c) and provides:

> Unless the regulations adopted pursuant to NRS 616C.110 provide otherwise, a rating evaluation must include an evaluation of the loss of motion, sensation and strength of an injured employee if the injury is of a type that might have caused such a loss. *No factors other than the degree of physical impairment of the whole man may be considered in calculating the entitlement to compensation for a permanent partial disability.*

(Emphasis added.) Pursuant to the Legislature's 2003 mandate, DIR adopted the fifth edition of the AMA *Guides*. NAC 616C.002(1). DIR also adopted NAC 616C.476, which reiterates NRS 616C.110(2)(c)'s and NRS 616C.490(5)'s prohibition on considering anything other than physical impairment:

> 1. A rating physician or chiropractor who performs an evaluation of a permanent partial disability shall evaluate the industrial injury or occupational disease of the injured employee as it exists at the time of the rating evaluation. The rating physician or chiropractor shall take into account any improvement or worsening of the industrial injury or occupational disease that has resulted from treatment of the industrial injury or occupational disease. *The rating physician or chiropractor shall not consider any factor other than the degree of physical impairment of the whole man in calculating the entitlement to compensation.*
> 2. In performing an evaluation of a permanent partial disability, a rating physician or chiropractor *shall not use*:
> (a) Chapter 14, "Mental and Behavioral Disorders," of the *Guide*; or
> (b) Chapter 18, "Pain," of the *Guide*.

(Emphases added.) Thus, in determining the percentage of impairment in an evaluation of a permanent partial disability, rating physicians and chiropractors are only prohibited from using the chapters on mental and behavioral disorders and pain.

## DIR proceedings

After DIR enacted NAC 616C.476, the Association filed a petition with DIR, requesting that it "amend NAC 616C.476 to include a section providing that a rating physician must not consider

activities of daily living in determining the percentage of disability for the spine."[3] The Association argued that allowing rating physicians to consider activities of daily living when rating the percentage of disability of the spine would permit recovery for subjective complaints of pain, which contradicted NRS 616C.110(2)(c)'s requirement, reiterated in NRS 616C.490(5), that DIR's regulations "[m]ust not consider any factors other than the degree of physical impairment of the whole man in calculating the entitlement to compensation."[4]

DIR conducted a public workshop, see NRS 233B.061(2), where it heard testimony from six certified rating physicians, four of whom testified for the Association. Three of the Association's physician witnesses testified that an injury's impact on activities of daily living is subjective and often due to pain. Another testified that a physical impairment influences performance of activities of daily living but an inability to perform activities of daily living is not an impairment in itself. These physicians also testified that the consideration of activities of daily living is only one tool (among others such as diagnostic tests, physical examinations, patient history, and clinical judgment) that is utilized to make a determination regarding a person's physical impairment and that none of the tools, individually, amounts to a physical impairment that entitles a person to compensation.

NAIW participated in the workshop and presented the testimony of two physicians, including Linda Cocchiarella, who is one of the editors of the fifth edition of the AMA Guides and a trainer and expert on the use of the AMA Guides.[5] Dr. Cocchiarella testified that consideration of activities of daily living is required for appropriate use of the AMA Guides; otherwise, the reliability of the ratings is negatively impacted. Dr. Cocchiarella further explained that activities of daily living are not purely subjective because the physician must use other information to validate the information that the patient provides, including questionnaires, physical therapy history, observation, and a functional capacity evaluation. Additionally, in making the impairment rating, the

---

[3]The Association's petition concerned spinal injuries only. The Association did not request that DIR prohibit the consideration of activities of daily living in the evaluation of other industrial injuries or occupational diseases.

[4]NRS 233B.100 permits "[a]ny interested person [to] petition an agency [to] request[ ] the . . . amendment . . . of any regulation." If the agency does not deny the petition, then it must proceed with the regulation-making process, including holding a public workshop and public hearing. See NRS 233B.100; NRS 233B.061.

[5]Dr. Cocchiarella also co-authored a book that instructs rating physicians how to utilize the AMA Guides properly when making impairment ratings for permanent partial disabilities. See Linda Cocchiarella and Stephen J. Lord, Master the AMA Guides Fifth: A Medical and Legal Transition to the Guides to the Evaluation of Permanent Impairment (5th ed. 2001).

physician must first determine whether the patient has a physical impairment and, if so, only then does the physician evaluate the impact that the impairment has on the patient's activities of daily living.

After DIR held the public workshop, but before it issued a decision, the Legislative Counsel Bureau (LCB), in a letter to Assemblywoman Barbara Buckley, addressed whether DIR "may exclude the portion of chapter 15 of the 5th edition of the AMA Guides that relates to the ability to engage in activities of daily living." *See* LCB Letter to Assemblywoman Buckley in response to her question on this issue (March 30, 2004). LCB opined that "the portion of Chapter 15 [of the AMA *Guides*] at issue *must* be excluded from use, for the purposes of rating a permanent partial disability, *if* that material provides for compensation for impairments beyond physical impairments and *must not* be excluded otherwise." (Second emphasis added.) Therefore, LCB determined that the issue was whether consideration of activities of daily living is something other than "physical impairment," as prohibited by NRS 616C.110(2)(c) and NRS 616C.490(5).

DIR concluded that "NRS 616C.490(5) does not require the exclusion of the portion of Chapter 15 of the Fifth Edition of the [AMA *Guides*] that relates to the ability to engage in activities of daily living[.]" DIR was persuaded by the variation between the fifth edition and earlier editions regarding activities of daily living, namely, that the fifth edition provides: "Only impairments that interfere with activities of daily living qualify for an impairment rating based on the [AMA] *Guides*. Such impairments are ratable in terms of a percentage of the whole person." DIR assumed that the Legislature was aware of the changes made in the fifth edition of the AMA *Guides* regarding the use of activities of daily living, thus intending that rating physicians use activities of daily living as a consideration in measuring physical impairment of spinal injuries.

Moreover, according to DIR, because the Legislature stated in NRS 616C.490 that the evaluation of the injured employee "should include an evaluation of the loss of motion, sensation and strength," the Legislature intended to include consideration of the functional abilities of the employee when calculating "the degree of physical impairment of the whole man." As a result, DIR concluded that NRS 616C.490(5) does not require that DIR amend NAC 616C.476 to exclude consideration of activities of daily living for spinal injuries.

*District court proceedings*

After DIR denied the Association's petition, the Association filed a complaint for declaratory and permanent injunctive relief in district court. In its complaint, the Association relied on a 1998

Eighth Judicial District Court case in which that court reviewed a 1997 DIR regulation that provided that subjective spinal pain without objective physical examination findings was additionally compensable up to four percent. *Nevada Self-Insurers Ass'n v. State of Nevada, Dep't of Bus. & Indus., Div. of Indus. Relations,* No. A377851 (Nev. Dist. Ct. June 1, 1998). In that case, the district court concluded that "[s]ubjective complaints of pain or limitations even if repeated and consistent do not become objective findings that would allow a physician to determine that an injured employee is suffering from a physical impairment," as required by NRS 616C.110 or NRS 616C.490. *Id.* The district court further determined that DIR's chronic-pain regulation violated Nevada's statutory provisions, and the district court permanently enjoined DIR from considering subjective pain complaints that lack physical findings in compensating permanent partial disabilities for spinal impairments.

Based on the district court's determination in 1998, the Association alleged in the district court proceedings in this case that because NAC 616C.476 allows rating physicians to consider limitations on activities of daily living, including subjective pain, when rendering an impairment rating for a person's spine injury under chapter 15 of the AMA *Guides,* such a rating considers something other than physical impairment in violation of NRS 616C.110(2)(c) and NRS 616C.490(5). Thus, the Association argued, NAC 616C.476 must be amended.

Below, the district court took notice of the 1998 case and acknowledged a statement made by Assemblywoman Chris Guinchigliani during a 2003 legislative hearing on the amendment to NRS 616C.110—"we do not do pain in Nevada." Hearing on A.B. 168 Before the Assembly Commerce and Labor Comm., 72nd Leg. (Nev., March 21, 2003). The district court further acknowledged LCB's 2004 letter to Assemblywoman Buckley providing that any part of chapter 15 of the fifth edition to the AMA *Guides* that provides for compensation for anything other than physical impairment was impermissible. The district court found that the testimony of the Association's witnesses—who opined that consideration of activities of daily living and subsequent ratings based thereon would constitute a rating for pain and would be something other than physical impairment—was credible and gave their testimony considerable weight because they were DIR-certified rating physicians.

The district court then made the following conclusions: (1) the declaratory relief action was proper pursuant to NRS 233B.110, (2) an agency's statutory construction is a legal question subject to de novo review, and (3) the legislative intent of NRS 616C.110(2)(c) and NRS 616C.490(5) clearly evidences that DIR erred by permitting rating physicians to consider something other

than the degree of physical impairment with respect to spine injury ratings. The district court granted the Association's complaint for declaratory relief, mandating that DIR amend NAC 616C.476 to prohibit physicians from adjusting ratings an additional one to three percent for limitations on activities of daily living when determining the percentage of impairment for spinal injuries under chapter 15 of the fifth edition of the AMA *Guides*. DIR and NAIW now appeal.[6]

## DISCUSSION

*Standard of review*

In granting the Association's complaint for declaratory relief, the district court interpreted and applied NRS 616C.110 and NRS 616C.490.[7] We review a district court's statutory construction determination de novo. *Sonia F. v. Dist. Ct.*, 125 Nev. 495, 499, 215 P.3d 705, 707 (2009).

When examining whether an administrative regulation is valid, we will generally defer to the "agency's interpretation of a statute that the agency is charged with enforcing." *State, Div. of Insurance v. State Farm*, 116 Nev. 290, 293, 995 P.2d 482, 485 (2000). However, we will not defer to the agency's interpretation if, for instance, the regulation "conflicts with existing statutory provisions or exceeds the statutory authority of the agency." *Id.* We have established that "administrative regulations cannot contradict the statute they are designed to implement." *Jerry's Nugget v. Keith*, 111 Nev. 49, 54, 888 P.2d 921, 924 (1995). The Association contends that NAC 616C.476 violates NRS 616C.110(2)(c) and NRS 616C.490(5).

---

[6]NAIW also moved for a stay of the district court's judgment pending appeal, which the district court granted in part, permitting rating physicians and chiropractors to "make and record upwards adjustments of up to 3%" when conducting permanent partial disability evaluations. However, the district court further ordered that if a person's permanent partial disability evaluation includes an award due to the impact of activities of daily living, "payment by the workers' compensation insurer of that portion of the PPD award related to [activities of daily living] is stayed through the date of a decision by the Nevada Supreme Court."

[7]DIR and NAIW argue that the Association inappropriately filed an action for declaratory relief because DIR's decision was reviewable via a petition for judicial review under NRS 616D.150. We conclude that NRS 233B.110(1) is the applicable statute in this case because the Association challenged NAC 616C.476 as being in excess of DIR's statutory authority and a violation of NRS 616C.110(2)(c) and NRS 616C.490(5). Accordingly, we conclude that the Association's declaratory relief action was the appropriate mechanism by which to challenge DIR's decision.

*NAC 616C.476 does not violate NRS 616C.110(2)(c) and NRS 616C.490(5)'s mandate that only a person's "physical impairment" can be considered when making an impairment rating*

When the language of a statute is plain and subject to only one interpretation, we will give effect to that meaning and will not consider outside sources beyond that statute. *State Farm*, 116 Nev. at 293, 995 P.2d at 485. However, when the statute is ambiguous and subject to more than one interpretation, we will evaluate legislative intent and similar statutory provisions. *Id.* at 294, 995 P.2d at 485. We determine the Legislature's intent by construing the statute in a manner that conforms to reason and public policy. *Bacher v. State Engineer*, 122 Nev. 1110, 1117, 146 P.3d 793, 798 (2006).

Whenever possible, we interpret "statutes within a statutory scheme harmoniously with one another to avoid an unreasonable or absurd result." *Allstate Insurance Co. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009). We presume that the Legislature enacted the statute " 'with full knowledge of existing statutes relating to the same subject.' " *State Farm*, 116 Nev. at 295, 995 P.2d at 486 (quoting *City of Boulder v. General Sales Drivers*, 101 Nev. 117, 118-19, 694 P.2d 498, 500 (1985)).

The Association argues that NAC 616C.476 violates NRS 616C.110(2)(c) and NRS 616C.490(5)'s mandate that only a person's "physical impairment" can be considered when making a spinal impairment rating. According to the Association, permitting consideration of activities of daily living is subjective and constitutes an improper consideration of pain, which is not a "physical impairment."[8] DIR and NAIW contend, on the other hand, that because the AMA *Guides* require that the impact on activities of daily living be assessed in rendering rating impairment evaluations, activities of daily living must be considered in order to give effect to NRS 616C.110's requirement that the AMA *Guides* be adopted. We conclude that both interpretations of NRS 616C.110(2)(c) and

---

[8]The Association argues that this court's decision in *Maxwell v. SIIS*, 109 Nev. 327, 849 P.2d 267 (1993), supports its position that an evaluation of "physical impairment" cannot include consideration of activities of daily living. In *Maxwell*, this court held that a claimant could not recover for a psychological injury because it does not constitute a physical impairment. *Id.* at 331, 849 P.2d at 270. However, we conclude that *Maxwell* is inapposite to this case because, here, the issue is whether consideration of activities of daily living can be used as one factor to determine the extent of a person's physical impairment—and the inability to perform activities of daily living is not, in itself, a physical injury for which a person can seek to receive compensation.

NRS 616C.490(5) are reasonable; thus, we determine that there is an ambiguity in the language of the statutes.

We also note that both NRS 616C.110(2)(c) and NRS 616C.490(5) provide that in examinations of a permanent partial disability, rating physicians and chiropractors must not consider any "factors other than the degree of physical impairment of the whole man," but neither statute defines "physical impairment" or "permanent partial disability." Moreover, although NRS 616C.490(1) provides that, for purposes of that section, the terms "'disability' and 'impairment of the whole man' are equivalent terms," the word "disability" is not defined in that statute or any other statute in Nevada's Industrial Insurance Act. *See* NRS 616A.005 (noting that Chapters 616A to 616D, inclusive, of NRS shall be known as the Nevada Industrial Insurance Act).[9] The absence of these definitions further illustrates the ambiguity in NRS 616C.110(2)(c) and NRS 616C.490(5). Therefore, to resolve the ambiguity, we turn to legislative intent and public policy considerations to determine the appropriate evaluation of physical impairment in the determination of a permanent partial disability resulting from a spinal injury.

### *Legislative intent and public policy*

When this court interprets a statute, we consider legislators' statements "when they are a reiteration of events leading to the adoption of proposed amendments." *Khoury v. Maryland Casualty Co.*, 108 Nev. 1037, 1040, 843 P.2d 822, 824 (1992), *disapproved of on other grounds by Breithaupt v. USAA Property and Casualty*, 110 Nev. 31, 34-35, 867 P.2d 402, 405 (1994). The Association relies on the following statement made by Assemblywoman Chris Giunchigliani during a 2003 legislative hearing on the amendment to NRS 616C.110:

> The AMA *Guide[s]*, everybody felt comfortable enough [adopting the fifth edition], because *we do not do pain in Nevada*. . . . [DIR is] also allowed . . . to make modification, so they can select certain sections out of the *Guide[s]* that they will not implement and let them use for rating purposes.

Hearing on A.B. 168 Before the Assembly Commerce and Labor Comm., 72nd Leg. (Nev., March 21, 2003) (emphasis added).

---

[9]NRS 616A.340 defines "total disability" as an "incapacity resulting from an accident arising out of and in the course of employment which prevents the covered workman from engaging, for remuneration or profit, in any occupation for which he is or becomes reasonably fitted by education, training or experience." However, this definition is not instructive regarding the definition of permanent partial disability, which is at issue in this case.

The Association argues that this statement demonstrates that the Legislature intended to prohibit rating physicians and chiropractors from considering pain in making impairment ratings for spinal injuries.

After reviewing the legislative history surrounding the amendment of NRS 616C.110, we determine that the Legislature's discussions regarding pain center on compensation on the basis of chronic pain alone, not whether a person's ability to perform activities of daily living may be evaluated as one tool in making an impairment rating for spinal injuries. The legislative history surrounding NRS 616C.110 is, therefore, not instructive regarding the consideration of activities of daily living. Consequently, we next evaluate what reason and public policy suggest the Legislature intended.

NRS 616C.490(5) specifies that "a rating evaluation *must* include an evaluation of the loss of motion, sensation and strength of an injured employee if the injury is of a type that might have caused such a loss." (Emphasis added.) In harmonizing this statutory language with the rest of the language in the statute, we determine that the loss of motion, sensation, and strength are factors that describe the physical impairment of the whole man. Because the loss of motion, sensation, and strength are all factors that influence the impact of a spinal injury on a person's ability to perform activities of daily living, we determine that this statutory language suggests that the Legislature intended to permit rating physicians and chiropractors to consider activities of daily living in making an impairment rating for spinal injuries.

Additionally, construing NRS 616C.110(2)(c) and NRS 616C.490(5) consistent with what reason and public policy suggest the Legislature intended, we conclude that it is appropriate that a person's ability to perform activities of daily living be utilized as one tool in the evaluation of an impairment rating for spinal injuries. Prohibiting consideration of activities of daily living—one of several tools used to make an impairment rating—is akin to prohibiting consideration of the patient's history or diagnostic tests. As Dr. Cocchiarella stated when she testified during the public workshop conducted by DIR, the AMA *Guides* require the consideration of the impact that a person's impairment has on his or her activities of daily living to produce a more reliable, accurate impairment rating. And without consideration of activities of daily living, people with the same type of spinal injury will be in the same category without differentiation between those whose activities of daily living are substantially impaired and those whose activities of daily living are not. The one- to three-percent differentiation, therefore, produces a more precise rating as to the extent of a person's impairment caused by his or her spinal injury—a re-

sult we conclude that reason and public policy suggest the Legislature intended.

We emphasize that permitting compensation for subjective complaints of pain without any objectively identifiable spinal injury, *i.e.*, chronic pain, clearly violates NRS 616C.110(2)(c)'s and NRS 616C.490(5)'s requirement that only "physical impairment[s]" be considered. However, we are persuaded that evaluating a person's ability to perform activities of daily living is not an improper consideration of subjective pain because, in order to provide the additional range of one to three percent for spinal injuries, rating physicians and chiropractors must first establish, through objective medical evidence, that a permanent physical impairment exists. Without the presence of an identifiable spinal injury, a person's subjective and continuing complaint of pain does not warrant an impairment rating.

Because we determine that DIR did not err by holding that NAC 616C.476 conformed to NRS 616C.110(2)(c) and NRS 616C.490(5), we conclude that the district court erred in granting the Association declaratory and injunctive relief. Accordingly, we reverse the order of the district court.

PARRAGUIRRE, C.J., and DOUGLAS, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.